Louis VISINTAINER and Lottie Visintainer, Plaintiffs,

v.

George H. ALLAN, District Director of Internal Revenue, Denver, Colorado, and United States of America, Defendants.

Civ. No. 6145.

United States District Court
D. Colorado.
Feb. 24, 1961.

6. Chicago, St. Paul, Minneapolis & Omaha Ry. Co. v. Kelm, D.C.Minn., 104 F.Supp. 745, 747, affirmed 8 Cir., 206 F.2d 831.

426

Fred A. Videon, Craig, Colo., for plaintiffs.

Donald G. Brotzman, U. S. Atty. and Richard P. Matsch, Asst. U. S. Atty., Denver, Colo. and J. J. Kilgariff, Attorney, Tax Division, Department of Justice, Washington, D. C., for defendants.

KERR, District Judge (Assigned).

This action is brought under 28 U.S.C. § 1346(a) (1), to recover the sum of $10,160.66, plus interest thereon from March 31, 1954, the date of payment of the allegedly overstated income taxes assessed and collected for the fiscal years ending October 31, 1946, 1947, 1948, 1949 and 1950. Plaintiffs paid the tax assessed against them and duly filed their claims for refund. The Notice of Disallowance of Claims for Refund was mailed to them on August 2, 1956. Plaintiffs are hereinafter referred to as "taxpayers".

The principal issue to be decided is the proper valuation of the sheep taxpayers had on hand on November 1, 1945. The sheep were purchased animals to be used for breeding. The taxpayers claim the right to take a depreciation on those animals that were purchased prior to November 1, 1945, said depreciation to be based on their original cost. It is the government's contention that the taxpayers are not entitled to depreciate that portion of their livestock which was in their inventory as of November 1, 1945, for the reason that during the years 1942 to 1945 they already reported such livestock in inventory and already realized the allowable deductions thereon. The government's computation for the value of the opening inventory on November 1, 1945, followed the taxpayers' method of accounting which resulted in valuing the ewes at $6.50 per head, and the bucks at $15 per head. Between November 1, 1945, and October 31, 1950, the inventoried animals have died or have been sold and on the first-in-first-out theory only 776 yearlings purchased prior to November 1, 1945, remain in the inventory at the unit price of $6.50 per head. Whenever these inventoried animals were sold after November 1, 1945, the difference between the unit price and the sales price was allowed as a capital gain.

The pertinent facts are not in dispute. For many years, and at least since January 1, 1942, taxpayers' books have been kept on the accrual basis. Their purchased and raised animals were carried in inventory on a "unit-livestock-price" method, the ewes being valued at $6.50 per head and the bucks valued at $15 per head. In their tax returns for each year in which the animals were purchased taxpayers deducted the difference between the "unit-livestock-price" and the "cost" price. Following an audit of taxpayers' income tax returns for the years in issue the government required tax-

payers to value all sheep purchased subsequent to November 1, 1945 at "cost" and to include them in inventory, or, in the alternative, to treat them as a capital asset subject to depreciation. Taxpayers elected to depreciate the animals purchased after November 1, 1945. Such animals were thereupon taken out of inventory, valued at cost, and depreciated. The animals in inventory on November 1, 1945, however, were left there and their value was not adjusted. Based on the "unit-livestock-price" the closing inventory on October 31, 1945, and the opening inventory for November 1, 1945, totaled $39,759.00. Taxpayers seek an adjustment which would allow for prior depreciation of the animals in the opening inventory which would result in a remaining cost price of $62,654.74 on November 1, 1945, instead of the unit-price of $39,759. Taxpayers base their claim for over-statement and overpayment of taxes on the refusal by the government to allow them to deduct the $22,895.74 difference.

On the basis of the September 1953 audit the Commissioner increased the taxpayers' income from that stated on their returns by restoring to their income for the fiscal years beginning November 1, 1945, through 1950, the difference between the cost of the purchased animals in each year and the unit price used by the taxpayers. The Commissioner then allowed depreciation on the animals acquired after November 1, 1945, based on a seven-year life for ewes and a four-year life for bucks.

Taxpayers first started using the unit price of $6.50 for ewes and $15 for bucks in the 1930's when the actual prices of such animals were less than the unit prices. In the 1940's, though the cost of the animals rose, the taxpayers continued to use the same unit price. According to the record, the audit of September 1953 disclosed that each year in which the taxpayers acquired the animals, they were deducting the difference between the cost of purchased animals and the unit price of $6.50 and $15 which was contrary to the regulations. It is admitted that

each year the taxpayers recovered the cost of the animals except for the $6.50 and $15, the parties agreeing that the taxpayers were entitled to and did recover their total costs. Concededly, taxpayers now seek to recover the depreciation of these same animals as if they had not recovered any part of their cost in the prior years.

Taxpayers argue that the method of accounting which was required by the government as of November 1, 1945, must apply to all the sheep whether on hand on, or purchased after, November 1, 1945.

The witness for the taxpayers admitted that the purpose of allowing depreciation for tax purposes is to recover the cost of the capital asset. He theorized that the taxpayers' recovery of their cost during the years 1942–1945 had not been due to depreciation. The conclusion propounded by the taxpayers is that they should now be permitted to recover their cost by way of depreciation, their transition to the depreciation method having been imposed upon them as a result of the audit.

Taxpayers asked the question, through their accountant, "What is the difference between a purchased animal, if purchased before or after November 1, 1945?".

November 1, 1945, is the break-off date, the prior years being barred by the statute of limitations. Each case must be determined in the light of its particular facts. In the case before me, the principal difference between the pre-November 1, 1945 animals and those purchased after that date, is that the cost deduction had already been taken for each year previous to November 1, 1945 under the taxpayers' method of accounting and reporting, and the cost of the animals purchased after November 1, 1945 was deducted over the course of four to seven years under the government's method of depreciation. Had the taxpayers complied with the regulations there would have been no such difference. Under the circumstances, in order to comply with the regulations, taxpayers had to correct, or have corrected, their inventory method.

The cases cited by taxpayers enumerate the broad general principles relating to

uniformity of reporting income and assessing taxes thereon, and to the importance and necessity of allocating income to the proper taxable period.

I do not believe that the government's readjustment has subjected taxpayers to a "bunching" of income. Nor do I believe that their adjusted income for the years ending October 31, 1946 through 1950 is distorted. The record does not show any attempt by the Internal Revenue Service to include in the 1946–1950 income any income properly allocable to the years prior to 1946. Compare, Commissioner of Internal Revenue v. Mnookin's Estate, 8 Cir., 1950, 184 F.2d 89; Caldwell v. Commissioner of Internal Revenue, 2 Cir., 1953, 202 F.2d 112.

■ There was no change in evaluating the animals in inventory on November 1, 1945. Even after that cut-off date, the opening and closing unit prices for those animals were reported on the same basis which was adopted by the taxpayers themselves many years ago. This fact satisfies the rule relied upon by taxpayers as laid down in the case of E. J. Scheer, Inc. v. Commissioner, 8 T.C.M. 917. See also National Fireworks, Inc. v. Commissioner of Internal Revenue, 1 Cir., 1957, 243 F.2d 295, 298. Under the system established by the government none of the taxpayers' income is escaping taxation, nor is double taxation being exacted from taxpayers. On the other hand, if the taxpayers were allowed to prevail in their contentions they would enjoy a double exemption.

■■ Taxpayers complain that their books were audited for the years 1942 to 1946, at which time the Commissioner did not question or object to the use of the unit-livestock-price method. Such posture does not signify acquiescence by the government. It is now settled beyond dispute that the Commissioner cannot be estopped from requiring a change in method of accounting simply because he had previously failed to object to the taxpayers' method. Caldwell v. Commissioner of Internal Revenue, 2 Cir., 1953, 202 F.2d 112, 115.

Under Regulations 111 Sec. 29.23(1)–10, which has been in effect since 1934, provides that depreciation of stock is not permissible where such breeding stock is included in inventory. That section reads in part as follows:

"A reasonable allowance for depreciation may be claimed on livestock acquired for work, breeding or dairy purposes, unless they are included in an inventory used to determine profits in accordance with Section 29.22(a)–7. Such depreciation should be based on the cost or other basis and the estimated life of the livestock. If such livestock be included in an inventory no depreciation thereof will be allowed, as the corresponding reduction in their value will be reflected in their inventory."

I am in accord with the statement that "the denial of depreciation deductions for inventoried breeding livestock accords with sound accounting practices for the precise reason stated in Section 29.23(1)–10, towit, 'the corresponding reduction in their value will be reflected in the inventory.'" Elsie So Relle et al. v. Commissioner, 1954, 22 T.C. 459, 474.

It appears to me that the taxpayers' contention is untenable. Their use of the inventory method manifested their election prior to November 1, 1945 not to capitalize their stock and not to claim depreciation deductions thereon. Herbert A. Nieman & Co. v. Commissioner, 33 T.C. 451 (12–9–59). After November 1, 1945, rather than carry their stock in inventory at cost, taxpayers elected to capitalize their stock and take depreciation deductions thereon. Since a change in pricing the inventory was required, even though taxpayers did not want to change, the record shows that they considered their election to capitalize to be in their best interest. They must stand by their own elections and cannot be heard now to complain.

Taxpayers deny that their election to capitalize was voluntary. It is true that as a result of the audit they were required to make some change. This was merely a requirement that they comply

with the law and inventory their purchased animals at actual cost rather than at a fixed cost adopted and used by the taxpayers.

Section 1.471–6(g), Regulations 111 provides as follows:

"A livestock raiser who uses the 'unit-livestock-price method' must include in his inventory at cost any livestock purchased, except that animals purchased for draft, breeding, or dairy purposes can, at the election of the livestock raiser, be included in inventory or be treated as capital assets subject to depreciation after maturity. If the animals purchased are not mature at the time of purchase, the cost should be increased at the end of each taxable year in accordance with the established unit prices, except that no increase is to be made in the taxable year of purchase if the animal is acquired during the last six months of that year. If the records maintained permit identification of a purchased animal, the cost of such animal will be eliminated from the closing inventory in the event of its sale or loss. Otherwise, the first-in, first-out method of valuing inventories must be applied."

This regulation appears in T.D. 5423 in Cum.Bul. 1945–1, at page 71. It was adopted December 16, 1944 as an amendment of Sec. 29.22(c)–6, Income Tax Regulation 111. On that same date, Mimeographed Letter 5790 was issued by the Commissioner in which he made the following explanations:

"1. The regulations, as amended by Treasury Decision 5423 (page 70, this Bulletin), provide that a taxpayer who has, for taxable years beginning prior to January 1, 1944, used a constant price method of valuing livestock will be considered as having elected the 'unit-livestock-price method'. No application need be made to the Commissioner by such a taxpayer for permission to use the 'unit-livestock-price method' for taxable years beginning after December 31, 1943. However, if the taxpayer

used a constant price method in previous years for only certain classes of his animals, and inventoried other classes by some other method, he must inventory all classes on the 'unit-livestock-price method' for taxable years beginning after December 31, 1943. The unit prices used in prior years will not be changed, and shall be applicable for taxable years beginning after December 31, 1943, as well as for prior years with respect to those classes of livestock inventoried in prior years on a constant unit price method. New unit prices should be selected for those classes of livestock inventoried in prior years by some other method. Such new unit prices and classifications will be used in 1944 and subsequent years only, and are subject to approval by the Commissioner on examination of the taxpayer's return." (P. 72.)

Paragraph 4 of the Commissioner's letter applies to taxpayers herein and reads as follows:

"4. A livestock producer who inventories livestock raised on the 'unit-livestock-price method' should inventory livestock purchased at cost. When the animals purchased are not mature, their values should be increased at the end of each accounting year in accordance with the unit prices established for raised animals, except that in the case of purchases made during the last six months of such year, no increase should be made during that year.

"If the records maintained permit identification of such purchased animals, the identified cost may be taken into account upon subsequent disposition; otherwise the first-in first-out method should be applied." (P. 76.)

▮ In complying with the regulations, had taxpayers wished to maintain a uniform and consistent accounting practice as they now claim is essential to reflect income properly, they would have included their purchased livestock in inven-

tory at cost. They chose, however, to take advantage of the alternative method offered them in Section 1.471.6(g). This election is applicable to all animals purchased after November 1, 1945. Having made the election to capitalize their livestock purchased after November 1, 1945, taxpayers are bound by it, and must consistently follow it "for all such animals purchased each year, until such time as the prior consent of the Commissioner of Internal Revenue is secured to change to another method." Rev.Rul. 60–60, Cum. Bul. 1960–1, pp. 190–191.

A review of the evidence, the decided cases, and regulations persuades me that the taxpayers are not entitled to recover the taxes which they allege to have been erroneously collected and I so hold.

The facts herein stated and the conclusions of law herein expressed shall be considered the Findings of Fact and the Conclusions of Law. Defendants will submit Judgment in accordance with this memorandum within 15 days from this date, each party to pay their own costs, and the clerk will enter an order accordingly.