George **D. PRATHER** and Mable **E.** Prather, Petitioners,

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

No. 17559.

United States Court of Appeals Ninth Circuit.

Sept. 16, 1963.

**932**

Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Harry Baum, Sharon L. King, and Edward Smith, Attys., Dept. of Justice, Washington, D. C., for respondent.

Before CHAMBERS and MERRILL, Circuit Judges, and TAVARES, District Judge.

CHAMBERS, Circuit Judge.

The Prathers have horrible income tax trouble. Economically, they did not make in their pump business a lot of money in 1954, but the commissioner and the Director of Internal Revenue have bunched into 1954 what was really the fruits of an individual business enterprise which began in 1942 and continued into 1955.

Apparently during the years of the enterprise the Prathers' net worth was going steadily, slowly and surely upward. But they were showing on their returns comparatively little taxable income from their business. This they accomplished from 1942 to 1953 by reporting on the cash receipts and disbursements method. No suggestion is made of any immorality or wrongfulness in so doing. In 1953, taxpayers switched their accounting from a cash basis to an accrual basis, but on their 1953 return they made adjustments to show their income on the old cash basis.

On January 1, 1954, the Prathers on the new accrual basis showed net assets of $303,397.63 and liabilities to others of $100,991.90. For 1954, the return showed net taxable income on an accrual basis of $9,410.52. The director has added over $200,000 of net taxable income to the 1954 return and asserts a deficiency of about $160,000 in taxes. We do not have to go outside of the record to surmise that the director's (now the commissioner's) position, if upheld, about ruins the Prathers and takes the fruits of a business they built up for over 13 years. The tax court has upheld the commissioner.

We assume that the business started when inventory and receivables were

A. Calder Mackay, and Charles J. Higson, Los Angeles, Cal., for petitioner.

small factors, or that at the outset it may have been that capital represented

in the inventory and receivables was off-set by borrowed capital. Anyway, they went on and on reporting on a cash basis, which obviously did not reflect their financial betterment somewhere between 1942 and 1953. For some of the returns for pre-1954 years, there were discussions with field agents about a change from cash to accrual reporting—but nothing happened. Neither the taxpayers nor the tax gatherer insisted on a change, and it is not clear that either wanted it.

In 1954 a new Internal Revenue Code was adopted with the following provision:

"§ 481. Adjustments required by changes in method of accounting

"(a) General rule.—In computing the taxpayer's taxable income for any taxable year (referred to in this section as the 'year of the change')—

"(1) if such computation is under a method of accounting different from the method under which the taxpayer's taxable income for the preceding taxable year was computed, then

"(2) there shall be taken into account those adjustments which are determined to be necessary solely by reason of the change in order to prevent amounts from being duplicated or omitted, *except there shall not be taken into account any adjustment in respect of any taxable year to which this section does not apply.*" (Emphasis supplied.) Enacted August 16. 1954.

In pertinent part, Section 446 (and its predecessor) has provided for a long time as follows:

"General rule for methods of accounting

"(a) General rule.—Taxable income shall be computed under the method of accounting on the basis of which the taxpayer regularly computes his income in keeping his books.

"(b) Exceptions.—If no method of accounting has been regularly used by the taxpayer, or if the method used does not clearly reflect income, the computation of taxable income shall be made under such method as, in the opinion of the Secretary or his delegate, does clearly reflect income.

\* \* \* \* \* \*

"(e) Requirement respecting change of accounting method.—Except as otherwise expressly provided in this chapter, a taxpayer who changes the method of accounting on the basis of which he regularly computes his income in keeping his books shall, before computing his taxable income under the new method, secure the consent of the Secretary or his delegate."

If taxpayer could successfully change his accounting and reporting method for the year 1954, Section 481, on August 16, 1954, gave him an escape to avoid the bunching of income in the year in which he made his shift of accounting basis. But Section 446(b) at least presented a problem—approval of change of method by the "Secretary or his delegate."

Promptly after the August 16, 1954, enactment the commissioner started one of his most successful "sit downs" in the history of American tax law. Not approving of Section 481 as enacted, he declined consistently to approve under 446(b) accounting method changes, until after the Congress on September 2, 1958, adopted the Technical Amendments Act, Section 29 of which amended Section 481(a) (2) to read as follows:

"Sec. 481. Adjustments required by changes in method of accounting

"(a) General Rule.—In computing the taxpayer's taxable income for any taxable year (referred to in this section as the 'year of the change')—

\* \* \* \* \* \*

"(2) there shall be taken into account those adjustments which are determined to be necessary solely by reason of the change in order to prevent amounts from being duplicated or omitted, except there shall not be

taken into account any adjustment in respect of any taxable year to which this section does not apply unless the adjustment is attributable to a change in the method of accounting initiated by the taxpayer."

With this change, the taxpayers, who already had their 1954 tax case in the tax court, were in real trouble. While the parties disagree as to the effect of non-approval of the change in accounting and reporting,[1] both would agree that the commissioner has never expressly approved the change.

■ Taxpayer's first point is that Section 481(a) (2) as amended in 1958, "unless the adjustment is attributable to a change in the method of accounting initiated by the taxpayer," is unconstitutional. This claim was not pleaded before the tax court. It could not have been pleaded, of course, before enactment. But there was plenty of time after enactment and before decision to raise the point. The tax court apparently received extensive briefs on the constitutionality and heard arguments thereon. In announcing the decision, the tax court held the issue not before it, but said, if it were, the court would decide in favor of the commissioner.

While we agree that cases should be kept to the basic pleadings, yet the tax court let the parties fight out before it the issue. We thus conclude the issue was before it for decision.

After study of the question, we hold the statute constitutional. Equitably the terrible penalty of the income bunching here leaves one disturbed, but we cannot yet find unconstitutionality. Of course, the possibilities of the 1954 Section 481, permitting a taxpayer to escape taxes that another just like him had paid, did not present an attractive picture. Thus, the commissioner was able to get the law changed four years later.

There seems little doubt that the 1958 amendments to Section 481 searching back to December 31, 1953, were intended to reach taxpayers who had done just as the Prathers had done. In our judgment, constitutionality was saved by two provisions inserted into the section giving a ten-year carry forward (Subsection (b) (4) of Section 481 as amended) and an option under Subsection (e) to return to (or recast) the old method of accounting at the election of the taxpayer. The election was to be made within six months. The last day to make the election was March 2, 1959. (There was some delay after enactment on September 2, 1958, before promulgation of the regulation telling taxpayers how to do it, but still there was time.)

Taxpayers rely greatly on the change of position they took in 1955. In that year they put their pump business into a family corporation. Taxpayers having ceased to do business as individuals, the ten-year forward was of inconsequential value. But still they didn't elect to return to the cash basis which had obtained through 1954. The reason given is that such a course would have inflicted grave tax consequences on their separate entity, the corporation. What those consequences would be, we are not told. But we think we know. Anyway, the problems of another entity on its taxes just can't be borrowed here to knock out the constitutionality of the 1958 changes in Section 481 of the act. We do not believe in their able brief that taxpayers ever quite meet the failure to elect to go back. Albeit, we say they have done as well as they can. It is not asserted that tax-

---

1. Perhaps the commissioner was not inclined prior to 1954 to require a change in accounting method because on changes made at his direction the courts were not inclined to let him bunch income in the year of change. See Commissioner of Internal Revenue v. Mnookin's Estate, 8 Cir., 184 F.2d 89, and Welp v. United States, 8 Cir., 201 F.2d 128. On the oth-er hand, pre-1954, the majority of decisions, we believe, had held that if the taxpayer initiated the change, income could be bunched in the year of change. See e. g., Advance Truck Co. v. Commissioner, 9 Cir., 262 F.2d 388. Prior to 1954 the effects of changing accounting methods seems to have been left to administrative and judicial decision.

payers were ignorant of the act, but if so that would not be an excuse.

We cannot say the period for election was unduly short. We assume men have lost fortunes for failure to answer summonses within 20, 30 or 60 days.

One must be sympathetic with the taxpayers here, but even on a "fireside equity" basis it can be said for the government that late in 1954 and early in 1955 it was common knowledge that the commissioner was fighting Section 481 as enacted in 1954 with everything at his command. His announced policy of not approving any changes in accounting methods may have been what prompted taxpayers to "go it alone" and unilaterally change their accounting and reporting basis. We cannot see that the commissioner's audit of the 1954 return committed the Congress or bound it not to amend the section.

A four-year search back is a long time, but cushioned as we believe it was with two escapes, one of which was clearly open to the taxpayers, we cannot say that we find unconstitutionality—in view of the very rare decisions of the Supreme Court which have proscribed retroactivity. We have to work within their pronouncements.[2]

Taxpayers assert if the 1958 amendment to Section 481 is constitutional, then they are entitled to carry back for two years behind 1954.

This point one must dig out of Section 481, after the 1959 amendments, in the following parts which are supposed to be pertinent:

"§ 481. [As amended by Sec. 29, Technical Amendments Act of 1958,

P.L. 85–866, 72 Stat. 1606]. Adjustments required by changes in method of accounting.

\* \* \* \* \* \*

"(b) Limitation on tax where adjustments are substantial.—

"(1) Three year allocation.—If—

"(A) the method of accounting from which the change is made was used by the taxpayer in computing his taxable income for the 2 taxable years preceding the year of the change, and

"(B) the increase in taxable income for the year of the change which results solely by reason of the adjustments required by subsection (a) (2), other than the amount of such adjustments to which paragraph (4) or (5) applies, exceeds $3,000,

then the tax under this chapter attributable to such increase in taxable income shall not be greater than the aggregate increase in the taxes under this chapter (or under the corresponding provisions of prior revenue laws) which would result if one-third of such increase in taxable income were included in taxable income for the year of the change and one-third of such increase were included for each of the 2 preceding taxable years.

"(2) Allocation under new method of accounting.—If—

"(A) the increase in taxable income for the year of the change which results solely by reason of the adjustments required by subsection (a) (2), other than the amount of

2. See Cohan v. Commissioner, 2 Cir., 39 F.2d 540, and cases there cited; Nicol v. Ames, 173 U.S. 509, 19 S.Ct. 522, 43 L. Ed. 786; Welch v. Henry, 305 U.S. 134, 59 S.Ct. 121, 83 L.Ed. 87. The court has carefully considered Nichols v. Coolidge, 274 U.S. 531, 47 S.Ct. 710, 71 L.Ed. 1184; Blodgett v. Holden, 275 U.S. 142, 48 S.Ct. 105, 72 L.Ed. 206; and Untermeyer v. Anderson, 276 U.S. 440, 48 S. Ct. 353, 72 L.Ed. 645. These cases involved retroactivity of taxation of single event occurrences, not retroactive income tax where the concept is "flow" and where the taxpayers had made unauthorized changes in accounting methods. Here the 1954 act gave taxpayers no right to unilaterally make a change and the 1958 act permitted them to have what they had legally on December 31, 1953, a right to the cash accounting basis. The difference is marked. To tax a single event (over which the taxpayer had no control) after it happened is shocking.

such adjustments to which paragraph (4) or (5) applies, exceeds $3,000, and

"(B) the taxpayer establishes his taxable income (under the new method of accounting) for one or more taxable years consecutively preceding the taxable year of the change for which the taxpayer in computing taxable income used the method of accounting from which the change is made,

then the tax under this chapter attributable to such increase in taxable income shall not be greater than the net increase in taxes under this chapter (or under the corresponding provisions of prior revenue laws) which would result if the adjustments required by subsection (a) (2), other than the amount of such adjustments to which paragraph (4) or (5) applies, were allocated to the taxable year or years specified in subparagraph (B) to which they are properly allocable under the new method of accounting and the balance of the adjustments required by subsection (a) (2), other than the amount of such adjustments to which paragraph (4) or (5) applies, were allocated to the taxable year or years specified in subparagraph (B) to which they are properly allocable under the new method of accounting and the balance of the adjustments required by subsection (a) (2) was allocated to the taxable year of the change.

\*　\*　\*　\*　\*　\*

"(4) Special rule for pre-1954 adjustments generally.—Except as provided in paragraphs (5) and (6)—

"(A) Amount of adjustments to which paragraph applies.—The net amount of the adjustments required by subsection (a), to the extent that such amount does not exceed the net amount of adjustments which would have been required if the change in method of accounting had been made in the first taxable year beginning after December 31, 1953, and ending after August 16, 1954, shall be taken into account by the taxpayer in computing taxable income in the manner provided in subparagraph (B), but only if such net amount of such adjustment would increase the taxable income of such taxpayer by more than $3,000.

"(B) Years in which amounts are to be taken into account.—One-tenth of the net amount of the adjustments described in subparagraph (A) shall (except as provided in subparagraph (C)) be taken into account in each of the 10 taxable years beginning with the year of the change. The amount to be taken into account for each taxable year in the 10-year period shall be taken into account whether or not for such year the assessment of tax is prevented by operation of any law or rule of law. If the year of the change was a taxable year ending before January 1, 1958, and if the taxpayer so elects (at such time and in such manner as the Secretary or his delegate shall by regulations prescribe), the 10-year period shall begin with the first taxable year which begins after December 31, 1957. If the taxpayer elects under the preceding sentence to begin the 10-year period with the first taxable year which begins after December 31, 1957, the 10-year period shall be reduced by the number of years, beginning with the year of the change, in respect of which assessment of tax is prevented by operation of any law or rule of law on the date of the enactment of the Technical Amendments Act of 1958.

"(C) Limitation on years in which adjustments can be taken into account.—The net amount of any adjustments described in subparagraph (A), to the extent not taken into account in prior taxable years under subparagraph (B)—

"(i) in the case of a taxpayer who is an individual, shall be taken into

account in the taxable year in which he dies or ceases to engage in a trade or business,

"(ii) in the case of a taxpayer who is a partner, his distributive share of such net amount shall be taken into account in the taxable year in which the partnership terminates, or in which the entire interest of such partner is transferred or liquidated, or

"(iii) in the case of a taxpayer who is a corporation, shall be taken into account in the taxable year in which such corporation ceases to engage in a trade or business unless such net amount of such adjustment is required to be taken into account by the acquiring corporation under section 381(c) (21).

"(D) Termination of application of paragraph.—The provisions of this paragraph shall not apply with respect to changes in methods of accounting made in taxable years beginning after December 31, 1963.

\*    \*    \*    \*    \*    \*

"(6) Application of paragraph (4).—Paragraph (4) shall not apply with respect to any taxpayer, if the taxpayer elects to take the net amount of the adjustments described in paragraph (4) (A) into account

in the manner provided by paragraph (1) or (2). An election to take the net amount of such adjustments into account in the manner provided by paragraph (1) or (2) may be made only if the taxpayer consents in writing to the assessment, within such period as may be agreed on with the Secretary or his delegate, of any deficiency for the year of the change, to the extent attributable to taking the net amount of the adjustments described in paragraph (4) (A) into account in the manner provided by paragraph (1) or (2), even though at the time of filing such consent the assessment of such deficiency would otherwise be prevented by the operation of any law or rule of law. An election under this paragraph shall be made at such time and in such manner as the Secretary or his delegate shall by regulations prescribe. \*    \*    \*"

Somehow or other there must be a way of writing a tax statute that is not so complex and does not involve subdivision under subdivision under subdivision under subdivision, cross-cutting and counter-marching.

But pursuant to 481(b) (6) the Treasury promulgated the regulation shown in the margin.[3]

3. SEC. 1.481–6  Election to Return to Former Method of Accounting.—

\*    \*    \*    \*    \*

(b) Except as provided in paragraph (e) of this section, a taxpayer who for any taxable year beginning after December 31, 1953, and ending after August 16, 1954, but before September 2, 1958, computed his taxable income under a method of accounting different from the method used for the immediately preceding taxable year may elect to recompute his taxable income, beginning with the taxable year for which such method was first used, under the method used for such preceding taxable year.

(c) The election referred to in paragraph (b) of this section shall be made in the following manner:

(1) On or before March 2, 1959, the taxpayer shall file with the district director with whom he filed his income tax return for the taxable year of the change a statement to the effect that he elects to

recompute his taxable income, beginning with the first taxable year for which he computed his taxable income under a method of accounting different from the preceding taxable year, under the method used for such preceding taxable year. The statement shall indicate the first taxable year for which taxable income was computed under a different method of accounting; and

(2) On or before June 1, 1959, the taxpayer shall file amended income tax returns for all taxable years affected by the election with a statement attached thereto showing the recomputation of taxable income for such taxable years under the method of accounting which he used in computing taxable income for the taxable year immediately preceding the taxable year of the change. The taxpayer shall also compute the amount of deficiency or overassessment in tax resulting from such recomputation of taxable income.

\*    \*    \*

Also, taxpayers say they were not required to make the election because they were already in the tax court where, by their presence, the statute of limitations had ceased to run, that the election procedure was provided simply to get waivers of the statute of limitations from taxpayers. No waivers from them were needed and so no waiver and election had to be filed with the director, so the reason runs. But the regulation did require the filing with the director. Even though it might be argued that once one's case is in the tax court it might be better to have a statute or regulation provide that an election could be filed in the tax court, still the regulation was within lawful bounds of the statute. What the taxpayers at the time thought of the two-year carry back is shown on June 23, 1961, when they attempted in a letter to the commissioner to secure allocation under 481(c) is shown by the following extract of the letter:

"Section 481 permitting the allocation of the adjustment so that the increase in tax would not be greater than that which would be due if the added income were taxed one-third in the change year and one-third in the two preceding years, gave no adequate relief for the reason that the accumulation of inventory had been made over a 12 year period in which the business had operated prior to 1954, and the notes and accounts receivable were obligations which had accumulated by gradual growth of the business. The income arising by reason of recognition of said receivables properly would involve adjustments affecting each of the twelve years the returns were filed on the cash basis. The spreading of items accruing over a substantial number of years over a 3-year period only, is manifestly inequitable."

We find no evidence that the taxpayers really ever "elected" the two-year carry back until they reached this court, and then they did it in the alternative. If it be silly to require the taxpayer to file the election with the director, nonetheless it was a silly condition that could have been met.

Overall, the trouble with taxpayers' case is that they had an escape that would have saved them from ruin, the option to jump back to their old cash basis accounting. There was a time limit. They let it go by. Further, it just can't be accepted as a reason to declare a statute unconstitutional the circumstances that they would not have transferred their business to a corporation had they known about statutory changes to come.

Here, as we have indicated above, the law takes a terrible toll. We have been unable to convince ourselves that we can avoid it.

The decision of the tax court is affirmed.