H. F. CAMPBELL COMPANY (FORMERLY H. F. CAMPBELL CONSTRUCTION COMPANY), PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 6010–64.  Filed May 18, 1970.

*Victor R. Wolder*, for the petitioner.
*John H. Menzel* and *Donald Berman*, for the respondent.

#### SUPPLEMENTAL OPINION

FEATHERSTON, *Judge:* Two issues which were not considered in the original report on this case (53 T.C. 439), promulgated on December 23, 1969, have now arisen and must be decided: (1) Whether respondent's motion to file an amended answer to conform the pleading to the proof should be granted; and (2) whether there is merit in petitioner's objections to respondent's computation for entry of decision. The principal questions under the second issue are (a) whether the profits from two contracts—those with International Harvester Co. and Progressive Wholesale Grocery—are taxable in 1959 rather than 1960, and (b) whether petitioner is entitled to elect, pursuant to section 481(b)(4),[1] to spread the income from five other disputed contracts over 1962 and the 9 succeeding years.

Petitioner, employing the completed-contract method of accounting permitted by section 1.451–3(b)(2), Income Tax Regs., failed to report in any year the profit derived from five long-term construction contracts (i.e., contracts with H. J. Heinz Co., United Parcel Service, the Copps Co., Anheuser Busch, and American Motors Co.). In the notice of deficiency respondent determined that the profits from these contracts were taxable in 1962. In making this determination he used the same four criteria to determine the year in which the contracts were completed—(1) physical completion in the field, (2) acceptance by the customer, (3) recordation of all anticipated costs, and (4) computation of the final bill—that petitioner had consistently used from 1954 through 1961.

---
[1] All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise noted.

Petitioner justified its failure to report the profits from the five disputed contracts as income for 1962 on the ground that beginning with that year its method of accounting was changed to the use of only two criteria (i.e., physical completion and acceptance by the customer) to determine the year for reporting contract income. In the original opinion we held, however, that the consistent use of the four criteria for determining when contract income became taxable was a method of accounting within the meaning of section 481. We further held that petitioner's use of the two rather than the four criteria constituted a change in accounting method for which the Commissioner's approval was required under section 446(e), but had not been obtained. Accordingly, we denied petitioner's claim under section 481 to the complete escape from tax of $88,057.25 through a "roll back" of this amount of income to pre-1954 years,[2] and directed entry of decision under Rule 50.

Together with his computation for entry of decision, respondent filed a motion for leave to file an amended answer to conform the pleading to the proof. As previously noted, the notice of deficiency determined that the five disputed contracts were completed in 1962. The proposed amended answer, however, alleges that two of the contracts, H. J. Heinz Co. and United Parcel Service, were completed in 1961 rather than 1962, and that petitioner's taxable income for 1961, and the deficiency for that year, is thereby increased.[3]

In our original report we found as an ultimate fact that the Heinz and United Parcel contracts were completed, and that the income therefrom was taxable, in 1961. Our findings in this respect were based on application of the four criteria (used by petitioner for 1954 through 1961 and the notice of deficiency) to the facts found from the stipulation[4] and excerpts of entries in petitioner's books and records which

---

[2] Petitioner's claim to relief from tax on the $88,057.25 was predicated on adjustments to its taxable contract income for each of the years 1954 through 1962, resulting from the asserted change in its accounting method. We made no findings as to the amount of its contract income for 1954 through 1959, because we held that respondent acted within his discretion in computing petitioner's taxable income under the accounting method which had been used for the 8 preceding years—i.e., that no *permissible* change had been made in petitioner's accounting method—and that, therefore, petitioner was not entitled to the coveted sec. 481 adjustment.

[3] Shifting the income from these contracts from 1962 to 1961 would increase the net operating loss for 1962 in an amount equal to the increase in taxable income for 1961.

[4] The pertinent paragraphs of the stipulation are as follows:

"38(c). The H. J. Heinz Company job (#61007-1) was commenced by corporate petitioner in 1961 and customer took possession and moved in in the same year. Corporate petitioner received final payment in November, 1961. A subcontractor filed a claim for extras of $2,489.62 for windstorm damage incurred in September, 1961. Petitioner billed its customer for this extra in September, 1961, and was paid in full in January, 1962, by its customer. Corporate petitioner's books and records show no costs incurred on this contract in 1962. (Attached hereto as Exhibit 27 are copies of pertinent portions of corporate petitioner's books and records.)

\* \* \* \* \* \* \*

"38(e). The United Parcel job was commenced in 1961 and the customer took possession and moved in in that year. Corporate petitioner incurred no additional costs in 1962 and none are reflected on its books and records. Final payment was received by corporate petitioner in December, 1961. (Attached hereto as Exhibit 29 are copies of pertinent portions of corporate petitioner's books and records)."

were introduced in evidence. Respondent's brief argues that "the H. J. Heinz Company and United Parcel contracts were completed in 1961." Petitioner's reply brief speculated as to the reason for keeping the Heinz contract open past 1961, but no evidence supported that speculation, and admitted that the reason for keeping the United Parcel job open "is completely unknown."

The proposed amendment to the answer merely conforms that pleading to the proof adduced at the trial, as contemplated by Rule 17 (*d*) of the Rules of Practice of this Court. Although the result is an increased deficiency for 1961, this Court has jurisdiction to determine a deficiency greater than that in the statutory notice "if claim therefor is asserted by the Secretary or his delegate at or before the hearing or a rehearing." Sec. 6214(a). The "hearing" includes the whole proceeding, down to the entry of the final decision. *Henningsen* v. *Commissioner*, 243 F.2d 954, 959 (C.A. 4, 1957), affirming 26 T.C. 528 (1956); accord, *Commissioner* v. *Finley*, 265 F.2d 885, 888 (C.A. 10, 1959), affirming a Memorandum Opinion of this Court, certiorari denied 361 U.S. 834 (1959); cf. *Bos Lines, Inc.* v. *Commissioner*, 354 F.2d 830, 835 (C.A. 8, 1965), affirming a Memorandum Opinion of this Court.

We see no merit in petitioner's claim that the amendment is prejudicial; indeed, the petition implicitly alleges that the profits from these contracts were taxable in 1961, since it states that respondent erred in determining that the profits from the five disputed contracts were taxable in 1962. Accordingly, respondent's motion to amend the answer to conform the pleading to the proof will be granted.

As to the computation of the deficiency, petitioner's calculations show no deficiencies for any of the years in controversy, 1960, 1961, and 1962. Respondent calculates petitioner's taxable income for 1960 as $99,952.29, against which he applies a net operating loss from 1962 of $36,801.51, leaving taxable income of $63,150.78. Petitioner contends that respondent should have eliminated from 1960 taxable income the profits derived from the Progressive Wholesale Grocery and International Harvester Co. contracts. Also, as discussed below, petitioner objects to the computation of the net operating loss carryback deduction from 1962.

We made no findings on the Progressive Wholesale and International Harvester contracts in our original report, because we understood that petitioner's arguments in respect thereto were predicated on the proposition that the profits from these contracts were erroneously reported in 1960 only if, as a matter of law, petitioner was entitled to have its income for that year recomputed by applying the two-criteria method. On reviewing the record and applying the four-criteria method, we are satisfied that the income from these contracts

was correctly reported by petitioner for 1960. The record shows that petitioner had not received the final bills from its subcontractors on the International Harvester job prior to the end of 1959. Similarly, part of the charges for the Progressive Wholesale job had not been computed or billed before the end of 1959. On this record we are unable to hold that petitioner has shown that it erred in reporting the income from these contracts in 1960.

Petitioner objects to respondent's computation for 1961 on the ground that the income in the amount of $48,010.55 derived from the Heinz and United Parcel contracts is not taxable in that year. For the reasons stated above, and in our original opinion, we have held otherwise.

As to 1962, respondent computes petitioner's loss as $36,801.51— taking into account the income of $97,926.72 from the Copps Co., Anheuser Busch, and American Motors Co. contracts completed in that year. Petitioner objects to respondent's computation, asserting that $88,057.25 of this income constitutes a pre–1954 adjustment. Under section 481(b)(4), petitioner argues, only the difference of $9,869.47 ($97,926.72 less $88,057.25) plus $8,805.73 (10 percent of $88,057.25) is to be reported in 1962, and the other 90 percent of the $88,057.25 is to be spread over the following 9 years.[5]

Section 481(b)(4) permits a taxpayer who has initiated a change of accounting method to spread pre–1954 adjustments over a 10-year period beginning with the year of the change. But a fundamental requirement of the section is that there be a change in the taxpayer's accounting method. To support its position that this requirement has been met, petitioner seizes upon language in our original opinion (53 T.C. at 447) to the effect that the use in its 1962 income tax return of "only two rather than the four criteria constitutes a change in accounting method."

Petitioner has taken the quoted language out of context. True, the use of the four rather than the two criteria in petitioner's income tax return for 1962 was a change of accounting method in the sense that its taxable income was computed under a method different from that employed for the preceding taxable year. However, as pointed out in our original opinion, section 446(e) lays down a rigid mandate that "a taxpayer who changes the method of accounting on the basis of which he regularly computes his income in keeping his books shall, before computing his taxable income under the new method, secure

[5] To support its computation petitioner has submitted an affidavit to which is attached a copy of a letter dated Feb. 16, 1970, addressed to the district director of internal revenue, in which petitioner "elects under IRC Section 481(b)(4)(B) to take the adjustments determined in accordance with Section 481(b)(4)(A) into account in the ten year period beginning with the taxable year of the change." See *Prather* v. *Commissioner*, 322 F. 2d 931, 938 (C.A. 9, 1963), affirming a Memorandum Opinion of this Court.

the consent of the Secretary or his delegate." Since petitioner failed to secure such consent, we held in our original opinion that the Commissioner acted within his authorized discretion in determining petitioner's income for 1962 through use of the four criteria—the method of accounting which petitioner used from 1954 through 1961.

Petitioner argues that its unilateral change of accounting method reflected in its 1962 return—even though the change was denied effect in the statutory notice and in this Court's opinion—entitled it to the section 481(b)(4) adjustments. The regulations under sections 446 and 481, read together, show clearly, however, that section 481 relief is available only where the change in accounting method is authorized or at least is not disapproved by the Commissioner. See secs. 1.446–1 (e)(3) and 1.481.–1(a), Income Tax Regs. Respondent here determined the deficiencies under petitioner's old method, implicitly if not expressly denying effect to the attempted change. How respondent may have dealt with petitioner's returns for 1963 and subsequent years does not affect the validity of the determinations made in the notice of deficiency before us in this proceeding. We conclude that petitioner's argument has no merit, and we will enter decision in accordance with respondent's computations.

*An appropriate order will be entered.*