**H. F. CAMPBELL COMPANY (formerly H. F. Campbell Construction Company), Petitioner-Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

**No. 20793.**

United States Court of Appeals, Sixth Circuit.

June 9, 1971.

Victor R. Wolder, New York City, for petitioner-appellant.

Leonard J. Henzke, Jr., Atty., Dept. of Justice, Tax Div., Washington, D. C., for respondent-appellee, Johnnie M. Walters, Asst. Atty. Gen., Meyer Rothwacks, William Massar, Attys., Tax Div., Dept. of Justice, Washington, D. C., on brief.

Before EDWARDS, PECK and BROOKS, Circuit Judges.

BROOKS, Circuit Judge.

This is an appeal by taxpayer, H. F. Campbell Company, from the Tax Court's determination of added income tax liability for taxpayer's fiscal years 1960 and 1961.[1] The Tax Court's findings of fact and opinion are reported at 53 T.C. 439 (1969), and a supplemental opinion is reported at 54 T.C. 1021 (1970). Since the facts out of which this controversy arose are narrated in the Tax Court's opinion, 53 T.C. 439, 440–445, only the briefest factual sketch of the case is necessary here.

The major issue in this case arises as a result of the disallowance by the Commissioner of taxpayer's claimed net operating loss deduction from its building construction business for 1960 and 1961 based on a carryback of alleged losses incurred in 1962. The Commissioner, over protest, included in taxpayer's gross income for 1962 certain disputed income, thereby eliminating taxpayer's claimed operating loss. This situation developed because of a change in taxpayer's accounting methods.

Prior to 1954 (tax years 1946–1953) taxpayer used one method of accounting for uncompleted contracts. Beginning in 1954, taxpayer changed its accounting method (the old method) and continued to use this method until 1962. In 1962 the Internal Revenue Service began an audit of taxpayer's 1960 and 1961 returns. Following the revenue agent's examination of taxpayer's record, the agent concluded that certain income from five construction contracts[2] which taxpayer had intended to report in 1962 should have been included as income in 1961. The agent's conclusion reflected his opinion that taxpayer's old account-

1. Deficiencies assessed for the years 1960 and 1961 were in the respective amounts of $19,194.31 and $59,958.14.

2. The five contracts and profits derived therefrom were:

| Name | Gross Profits |
|------|---------------|
| 1. The Copps Company | $ 43,158.49 |
| 2. Anheuser Busch | 33,671.05 |
| 3. H. J. Heinz Company | 45,650.17 |
| 4. American Motors (Wisconsin) | 23,381.32 |
| 5. United Parcel | 2,360.38 |
| | $148,221.41 |

ing system (1954–1962) did not accurately report the income from uncompleted construction contracts in the year in which it was earned.[3] In March, 1963, the Commissioner advised the taxpayer of the agent's proposed adjustments to its tax liability for 1961. When taxpayer filed its 1962 tax return in March, 1963, it used an accounting method (the new method) identical to that used by the revenue agent in his audit.[4] As a result, taxpayer's 1962 return excluded from income the profits from the five construction contracts. In July, 1963, the Commissioner sent taxpayer a 30-day letter advising that if it did not agree with the agent's inclusion of the disputed income in 1961, it could make appropriate protests. Taxpayer did protest.

In October of 1963, the same revenue agent began an audit of taxpayer's 1962 return. At that time, the agent indicated that while he would make adjustments to taxpayer's 1962 return, the ad-

justments were not caused by taxpayer's new method of accounting. One year after this audit, the Commissioner issued a notice of deficiency to taxpayer which did not adopt the recommendation of the agent to include the income from the five contracts in 1961, but rather determined that taxpayer understated its 1962 income by the amount of the profits from the contracts. The Commissioner's including of this income in 1962 eliminated taxpayer's claimed net operating loss carryback for 1960 and 1961.

In the Tax Court as well as on this appeal, taxpayer contends that it did not initiate the change in its accounting system and therefore, is entitled under 26 U.S.C. § 481(a) to a pre-1954 reduction in the amount of the Commissioner's adjustments to its 1962 income. In the alternative, taxpayer maintains that if it is found that it did initiate the 1962 change, then it is argued that 26 U.S.C. § 481(b) (4)[5] is an expressed exception to 26 U.S.C. §

---

3. The old accounting system used four criteria to determine in which year profit or loss from construction contracts was to be reported for income tax purposes. The criteria were 1) physical completion, 2) acceptance by the customer, 3) recordation of all anticipated costs, and 4) computation of the final bill to be sent the customer. It is fairly obvious that the system gave substantial leeway to the taxpayer to decide in which taxable year the profit or loss from construction contracts was to be reported.

4. The new method of determining contract completion for income tax purposes used only two criteria 1) physical completion, and 2) customer acceptance.

5. § 481(b)
 (4) Special rule for pre-1954 adjustments generally.—Except as provided in paragraphs (5) and (6)—
  (A) Amount of adjustments to which paragraph applies.—The net amount of the adjustments required by subsection (a), to the extent that such amount does not exceed the net amount of adjustments which would have been required if the change in method of accounting had been made in the first taxable year beginning after December 31, 1953, and ending after August 16, 1954, shall be taken into account by the taxpayer in

computing taxable income in the manner provided in subparagraph (B), but only if such net amount of such adjustment would increase the taxable income of such taxpayer by more than $3,000.
  (B) Years in which amounts are to be taken into account.—One-tenth of the net amount of the adjustments described in subparagraph (A) shall (except as provided in subparagraph (C)) be taken into account in each of the 10 taxable years beginning with the year of the change. The amount to be taken into account for each taxable year in the 10-year period shall be taken into account whether or not for such year the assessment of tax is prevented by operation of any law or rule of law. If the year of the change was a taxable year ending before January 1, 1958, and if the taxpayer so elects (at such time and in such manner as the Secretary or his delegate shall by regulations prescribe), the 10-year period shall begin with the first taxable year which begins after December 31, 1957. If the taxpayer elects under the preceding sentence to begin the 10-year period with the first taxable year which begins after December 31, 1957, the 10-year period shall be reduced by the number of years, beginning with the year of the change, in respect of which

446(e)[6] and taxpayer should be able to spread forward reporting over a ten year period the amount of its claimed pre-1954 adjustment. The Tax Court rejected both of these contentions. Taxpayer also challenges the Tax Court's permitting of the Commissioner to amend its answer after trial to assess additional deficiencies, and its refusal to make adjustments to taxpayer's 1960 taxable income for income allegedly properly includable in 1959. The Tax Court's handling of these matters appears in its supplemental opinion. 54 T.C. 1021 (1970).

Taxpayer first contends that the Tax Court erred in finding that it initiated the change in its accounting system and, therefore, the Commissioner's adjustments should not have taken into account pre-1954 amounts. 26 U.S.C. § 481(a) (2).[7] The Tax Court made a finding of fact that taxpayer initiated the change in its accounting system. While there appears to be some conflict in the Circuits over the question of what effect a revenue agent's "suggesting" or "requiring" a taxpayer to change its accounting system has upon the issue of who initiated the change, *compare* Biewer v. Commissioner, 341 F.2d 394 (6th Cir. 1965) with Commissioner of Internal Revenue v. Welch, 345 F.2d 939 (5th Cir. 1965) and United States v. Lindner, 307 F.2d 262 (10th Cir. 1962), in the present case the issue turned on a simple question of credibility. Taxpayer's

witnesses testified that the revenue agent instructed or directed them to change accounting systems. The revenue agent denied ever having suggested, instructed or directed taxpayer to change its accounting system. The Tax Court resolved the issue in favor of the government finding the agent's "testimony credible". Findings of fact made by the Tax Court cannot be set aside by a reviewing court unless clearly erroneous, 26 U.S.C. § 7482(a); Commissioner of Internal Revenue v. Duberstein, 363 U.S. 278, 80 S.Ct. 1190, 4 L. Ed.2d 1218 (1960); Southeastern Canteen Company v. Commissioner, 410 F.2d 615, 622 (6th Cir. 1969), cert. denied 396 U.S. 833, 90 S.Ct. 89, 24 L.Ed.2d 84; Biggs v. Commissioner, 440 F.2d 1 (6th Cir. 1971), and when the question turns solely on credibility of witnesses the Tax Court has the tremendous advantage of hearing live testimony, and its judgment must be accorded great weight. Delia v. Commissioner, 362 F.2d 400 (6th Cir. 1966); 57 Herkimer St. Corporation v. Commissioner, 316 F.2d 726 (5th Cir. 1963). The record in this case shows that there was substantial evidence to support the Tax Court's findings that taxpayer initiated the 1962 change in its accounting system and that finding is not clearly erroneous.

Taxpayer next argues that if it did initiate the 1962 change it should be able to receive the benefit of the ten year forward reporting provision of 26

---

assessment of tax is prevented by operation of any law or rule of law on the date of the enactment of the Technical Amendments Act of 1958.

6. § 446
(e) *Requirement respecting change of accounting method.*—Except as otherwise expressly provided in this chapter, a taxpayer who changes the method of accounting on the basis of which he regularly computes his income in keeping his books shall, before computing his taxable income under the new method, secure the consent of the Secretary or his delegate. Aug. 16, 1954, c. 736, 68A Stat. 151.

7. § 481. *Adjustments required by changes in method of accounting*

*(a) General rule.*—In computing the taxpayer's taxable income for any taxable year (referred to in this section as the "year of the change")—
(1) if such computation is under a method of accounting different from the method under which the taxpayer's taxable income for the preceding taxable year was computed, then
(2) there shall be taken into account those adjustments which are determined to be necessary solely by reason of the change in order to prevent amounts from being duplicated or omitted, except there shall not be taken into account any adjustment in respect of any taxable year to which this section does not apply unless the adjustment is attributable to a change in the method of accounting initiated by the taxpayer.

U.S.C. § 481(b) (4), and the Tax Court erred in holding that since taxpayer did not comply with 26 U.S.C. § 446(e), it was precluded from employing 26 U.S.C. § 481(b) (4). It does not appear that the question of whether section 481(b) (4) is an expressed exception to section 446(e) has ever been squarely decided. Taxpayer cites language in the Senate and House Committee reports on the Technical Amendment Act of 1958, See, 1958 United States Code Congressional and Administrative News, pp. 4833–34, to the effect that "Changes in methods of accounting initiated by the taxpayer include a change in method of accounting which he originates, by requesting permission of the Commissioner to change, and also cases where the taxpayer shifts from one method of accounting to another without the Commissioner's permission." Taxpayer also relies on the case of Fred P. Pursell, 38 T.C. 263 (1962) wherein the initiating taxpayer received the benefit of the ten year spread forward provision of section 481(b) (4) without having obtained consent to change accounting systems from the Commissioner. On the other hand, the case of Howard H. Perelman, 41 T.C. 234 (1963), uses language militating towards the opposite conclusion. In the *Perelman* case it was observed that "if [taxpayer] had changed their method of accounting without first requesting the permission of the [Commissioner], it is possible he [the Commissioner] could have insisted that they revert to their old method." Neither case is dispositive of the present dispute since the language used had no relation to the ultimate holding of the court and was at best obiter dicta. Moreover, we cannot construe the language taxpayer cites from the legislative committee reports as showing a Congressional intent to make section 481(b) (4) an expressed exception to section 446(e). Clearly sec-

tion 481(b) (4) on its face does not indicate that it is an exception. A reading of sections 481(b) (4) and 446(e) with their accompanying regulation indicates that the Tax Court was correct in concluding that section 481(b) (4) is not an expressed exception to the requirements of section 446(e).[8] Taxpayer's argument that the Commissioner implicitly consented to the 1962 change by not having challenged taxpayer's use of the new method in 1963 is without merit. *See* Caldwell v. Commissioner, 202 F.2d 112 (2nd Cir. 1953); Visintainer v. Allan, 191 F.Supp. 425 (1961), aff'd. 301 F.2d 312 (10th Cir. 1962).

■■ Before a Rule 50 decision was entered in this case, the Commissioner was permitted under Rule 17(d) of the Tax Court's Rules of Practice to amend its answer to claim an increased deficiency for 1961 because of certain findings made by the Tax Court. The Tax Court found that the profits from two of the construction contracts[9] that the Commissioner had included in 1962 were properly includable in 1961. Taxpayer claims surprise, prejudice and untimeliness as grounds of error in the Tax Court's decision to permit the Commissioner to amend its answer. It is difficult to accept taxpayer's argument that it was surprised and prejudiced by the Tax Court's decision. The whole proceedings involved the question of which years the profits from the five unfinished construction contracts should be taxed. Contrary to taxpayer's assertion that it did not have a day in court on the question, the entire litigation involved in varying degrees the issue of which taxable year should reflect the profits from these contracts. Respecting the claim of untimeliness, we believe the motion was timely. Rule 17(d) provides that "The Court may at any time during the course of the trial grant a motion of either party to amend its

---

8. The Commissioner has also argued that no part of the adjustment to taxpayer's 1962 income is attributable to a pre-1954 inclusion and, therefore, section 481(b) (4) does not apply in any event. The

Tax Court did not reach this issue and because of our decision nor do we.

9. The two contracts were the United Parcel and H. J. Heinz contracts. See n. 2.

pleadings to conform to the proof * * *." The phrase "course of the trial" cannot be so narrowly construed as to mean only the period in which testimony is taken. Rather, logic and practicality dictate that the period of the "course of the trial" include all proceedings down to final judgment. Moreover, the entry of judgment in this case was to be under Rule 50 and increased deficiencies may be assessed under the Rule at any time before decision and judgment of the Court has been entered. Henningsen v. Commissioner, 243 F.2d 954 (4th Cir. 1957).

Taxpayer's last contention is that the Tax Court erred in not correcting taxpayer's mistaken inclusion in 1960 of profits from the sale of certain property. It is maintained that the income was properly includable in 1959 but through a mistake made by taxpayer it was included in 1960. The Tax Court reviewed taxpayer's records applying the criteria for reporting income that taxpayer used. Its finding that taxpayer had included the income in the proper taxable year is not clearly erroneous and is supported by substantial evidence.

The decision of the Tax Court is affirmed.