CHARLES G. SMITH AND MARGARET M. SMITH, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 8233-74.     Filed April 28, 1976.

*William R. Frazier,* for the petitioners.
*Stuart B. Kalb,* for the respondent.

FEATHERSTON, *Judge:* Respondent determined a deficiency in the amount of $1,861.19 in petitioners' Federal income tax for 1968. Due to concessions by the parties, the sole issue for decision is whether, under the completed contract method of accounting, petitioners were required to report as income in 1968 the profit from a long-term subcontract where, during that taxable year, a dispute arose between petitioner Charles G. Smith and the prime contractor over a portion of the subcontract price.

### FINDINGS OF FACT

Petitioners Charles G. Smith and Margaret M. Smith, husband and wife, resided in Harvey, La., at the time their petition was filed. They filed a joint Federal income tax return for 1968 with the Internal Revenue Service Center, Austin, Tex.

During 1968 petitioner Charles G. Smith was engaged in the construction business as a sole proprietor under the name "C. G. Smith Company" (hereinafter, "petitioner" will refer to Charles G. Smith individually and as doing business as C. G. Smith Co.). Petitioner specialized in foundation excavation work and piledriving. He employed the completed contract method of reporting income from long-term construction contracts.

On June 28, 1967, Laguna Construction Co. (hereinafter Laguna), a sole proprietorship owned by Jack Sanders (hereinafter Sanders), entered into a general contract with the City of New Orleans, La. (sometimes referred to as the City), for the construction of the Almonaster-Florida Avenues overpass (the overpass or project) in that city. On August 29, 1967, petitioner entered into a subcontract with Laguna to do certain foundation and pile-driving work for the overpass project.

Paragraph 22(a) of the subcontract between Laguna and petitioner provides:

On the first day of each month Subcontractor [C. G. Smith Co.] shall present to Contractor [Laguna] a statement of the work done during the preceding month, which statement, when checked and approved by Contractor, will be paid within five (5) days after receipt of payment from Owner [City of New Orleans], providing progress of the work and payments for labor used and material purchased by Subcontractor have been satisfactory, provided that Contractor may, at its option on each payment, retain 10% of each estimate until final payment, which shall be made after completion of the work covered by this contract and written acceptance thereof by the Engineer, and full payment therefor by Owner, provided Subcontractor has furnished evidence, if

requested, that all claims for labor and materials have been paid, and provided further that Subcontractor has complied with all the provisions of this contract.

By the terms of the subcontract, the issuance of periodic payments was not to be construed as the acceptance of defective work or improper materials.

The work performed by petitioner was the first major stage in the construction of the overpass, and it amounted to approximately 10 percent of all the work done on the project. The project engineer, who served as the representative of the City, and representatives of Laguna made daily inspections of the work performed by petitioner. Completion of the piledriving and related work in an acceptable fashion was required as a condition to permitting further construction work to commence. As soon as each pile was driven and the related work on that pile was completed to the satisfaction of the engineer and Laguna, another subcontractor would begin the next stage of construction. Any defects in petitioner's work were immediately corrected and reinspected by the project engineer until he was satisfied that the work was acceptable.

The project engineer authorized all periodic progress payments specified in the subcontract for petitioner's work from the beginning through its completion. Petitioner would not have received these payments if the work in progress had not been satisfactory.

Petitioner completed the work under the subcontract in early 1968 and submitted his final bill to Laguna in March 1968. The subcontract called for payment to petitioner of $226,870, which amount was adjusted to $227,896.17 pursuant to provisions of the subcontract. By the end of 1968, Laguna had paid petitioner $209,896.17.

The $18,000 difference between the amount owed and the amount paid was the subject of a dispute between petitioner and Laguna. The controversy arose in the summer of 1968, shortly after petitioner made his request for the payment of the final billing. Laguna refused to pay the remaining $18,000 and claimed that petitioner already had been paid in full.

The entire project was formally accepted by the City in June 1969. On May 1, 1970, petitioner filed suit against Sanders, doing business as Laguna, to recover the disputed $18,000. Sanders filed an answer and counterclaim on January 12, 1972, alleging fraud and misrepresentation by petitioner and requesting

damages of $25,000. The litigation was settled on May 23, 1972. Laguna paid petitioner $5,000 and agreed not to prosecute its counterclaim against petitioner.

The cost data sheets from the books and records of C. G. Smith Co. as of December 31, 1968, show the following income and expenses relating to the Laguna subcontract:

| | | |
|---|---|---|
| Income | | $227,896.17 |
| Less: | | |
| Cost per books | $182,948.84 | |
| Equipment rent | 3,300.00 | 186,248.84 |
| Profit | | 41,647.33 |

On their tax return for 1968, petitioners reported a net operating loss of $41,093.71 and did not report any income from the Laguna subcontract. In his notice of deficiency, respondent determined that income in the amount of $41,647.33 from work performed under the subcontract should have been reported in 1968. Respondent now concedes that the $18,000 in dispute between petitioner and Laguna at the expiration of petitioners' taxable year 1968 need not have been reported as income in that year.

### ULTIMATE FINDING OF FACT

The work performed by petitioner was finally completed and was accepted by Laguna in 1968.

### OPINION

Petitioner reported his income from long-term contracts under the completed contract method of accounting allowed by section 1.451-3, Income Tax Regs. Under that method income derived from long-term contracts is calculated and reported in the year in which the contract is "completed," sec. 1.451-3(d)(1), Income Tax Regs. The term "completed" is defined in section 1.451-3(b)(2), Income Tax Regs., as follows:

a long-term contract will not be considered "completed" until final completion and acceptance have occurred. * * * With respect to a subcontractor who completes his work on a long-term contract prior to the completion of the entire contract, "final completion and acceptance" of the contract with respect to such subcontractor shall be deemed to have occurred when his work has been completed and has been accepted by the party with whom he has contracted.

To support his position that his income from the overpass project was not taxable in 1968, petitioner makes two arguments. First, although petitioner had finally completed his work under the subcontract by February 1968, he maintains that there was no final "acceptance" until June 1969, when the City of New Orleans accepted the entire project. Second, petitioner contends that the controversy over the $18,000 and the counterclaim for $25,000, both of which are described fully in our Findings, prevented a determination of the profitability of the contract until those disputes were resolved in 1972. Respondent concedes that the disputed $18,000 need not have been reported as income in 1968 but maintains that the remaining profit of some $23,000 was properly reportable in that year.

We hold for respondent.

The first issue is narrow: Was petitioner's work under the subcontract, which was admittedly completed in 1968, also "accepted" in that year. The regulation quoted above makes specific provision for subcontractors. Under that regulation it is clear that final acceptance of the entire project is not determinative. Rather, acceptance by the prime contractor of the subcontractor's work is sufficient to trigger accrual under the completed contract method of accounting.

The record clearly establishes that in 1968, Laguna accepted petitioner's work under the subcontract. Construction of the overpass was supervised by the City's project engineer and by Laguna's engineer. Petitioner's work on each pile was currently inspected by both engineers. The project engineer and Laguna authorized progress payments to petitioner pursuant to the subcontract, and such authorizations would not have been forthcoming under paragraph 22(a) of the subcontract, quoted in our Findings, if petitioner's work had not been satisfactory. Also, as petitioner completed work on each separate pile, the engineers authorized another subcontractor to commence the next stage of construction on that site. In some instances petitioner was required to correct errors so that subsequent work could be performed. Long before the end of 1968, however, petitioner finished all the pile-driving work, and the subsequent construction phase had commenced.

Moreover, petitioner presented a final bill to Laguna, and by the end of 1968 Laguna had paid all but $18,000 of that bill. The $18,000 was withheld not because of Laguna's refusal to accept

petitioner's finished work but due to questions which arose as to who had paid for certain materials. Indeed, Sanders, Laguna's owner, testified that petitioner had done a commendable job. All these facts lead us to conclude that in 1968, Laguna, the party with whom petitioner had contracted, accepted his work. See sec. 1.451-3(b)(2), Income Tax Regs.

Petitioner argues that for the purposes of the regulation, his work was not accepted until the City of New Orleans formally accepted the entire project in June 1969. This contention not only ignores the language of the regulation, quoted above, but is also inconsistent with the holdings of several cases decided by this Court. A case almost directly on point is *Hooper Construction Co. v. Renegotiation Board,* 35 T.C. 837 (1961), where the issue was whether final acceptance of the subcontractor's work was postponed until the United States Army Corps of Engineers accepted the entire project. By December 19, 1951, the contractor, whose representative made daily inspections of the taxpayer's work, had accepted as satisfactory all of the taxpayer-subcontractor's work and had authorized subsequent construction operations. We held (p. 848) that: "Once * * * [the contractor] initially accepted * * * [the taxpayer's] work on December 19, 1951, for further work thereon by other subcontractors, * * * [the taxpayer] had for all practical purposes completed its contract." The income was reportable in 1951 despite the fact that formal acceptance by the owner of the entire project occurred in 1952. See also *Ehret-Day Co.,* 2 T.C. 25, 36 (1943); cf. *Vang v. Lewellyn,* 35 F.2d 283, 284 (3d Cir. 1929); *Mesta Machine Co.,* 12 B.T.A. 523, 537-539 (1928). The facts of the instant case are so strikingly similar to those before us in *Hooper* that the same conclusion is unavoidable.[1]

Petitioner's second contention is that none of the income from the Laguna subcontract was reportable in 1968 because of the dispute over the $18,000 claimed by petitioner and the counter-claim for $25,000 made by Sanders. These controversies, petitioner maintains, combined to prevent a determination prior

---

[1] Cases cited by petitioners, such as *Thompson-King-Tate, Inc. v. United States,* 296 F.2d 290 (6th Cir. 1961), and *E. E. Black, Ltd. v. Alsup,* 211 F.2d 879 (9th Cir. 1954), are distinguishable. Those cases cope with the controversial issue of whether substantial completion satisfies the requirement of "final completion." However, the issue of completion of petitioner's work under the subcontract is conceded, and the question is limited to whether that work was accepted in 1968.

to 1972, when the litigation was settled, of whether profit or loss would be realized from the subcontract.

Section 1.451-3(d)(2),[2] Income Tax Regs., governs this issue. It provides that if the amount in dispute between the parties affects so much of the contract price that it is not possible to determine whether a profit or loss will ultimately be realized, no income or loss is reportable in the taxable year of completion, sec. 1.451-3(d)(2)(ii), Income Tax Regs. In cases where a profit on the contract is assured, however, the entire gross contract price, reduced by the amount in dispute, and all costs allocable to the contract are to be accounted for in the year in which the contract is completed and accepted, sec. 1.451-3(d)(2)(iii) and (iv), Income Tax Regs. See *C. H. Leavell & Co.,* 53 T.C. 426, 437-438 (1969).

There is no evidence that Sanders asserted any counterclaim prior to 1972 in the dispute over the subcontract price. At the end of 1968, the only amount in dispute was $18,000. That dispute, however, does not prevent the determination that profit was realized in 1968 on the completion of the work under the subcontract. *C. H. Leavell & Co., supra* at 438. Respondent concedes that the disputed $18,000 need not have been reported in 1968. We hold the remainder of the profit, $23,647.33, was taxable in 1968.

To reflect the foregoing,

*Decision will be entered under Rule 155.*

---

[2] Sec. 1.451-3 Long-term contracts.

(d) *Completed contract method—* * * *

(2) *Contracts with disputes from buyer claims.* * * *

(ii) If the amount reasonably in dispute affects so much of the contract price that it is not possible to determine whether a profit (an excess of the gross contract price over the costs properly allocable to such contract) or loss (an excess of the costs properly allocable to the long-term contract over the gross contract price) will ultimately be realized on such contract, then no item of income or deduction which is properly allocable to such contract shall be included in or deducted from gross income in the taxable year in which such contract is completed (without regard to such dispute).

(iii) In all other cases, the entire amount of the gross contract price reduced (but not below zero) by an amount equal to the amount reasonably in dispute shall be included in gross income in the taxable year in which such contract is completed (without regard to the dispute).

(iv) If the taxpayer is assured of a profit on such contract regardless of the outcome of the dispute, then all costs which are properly allocable to such contract and which have been incurred prior to the end of the taxable year in which such contract is completed (without regard to the dispute) shall be deducted in such year.