B & H CONSTRUCTION & SUPPLY COMPANY, INC., Petitioner, v. COMMISSIONER OF INTERNAL REVENUE, Respondent
B & H Constr. & Supply Co. v. Commissioner
Docket Nos. 621-76, 9406-77.
United States Tax Court
T.C. Memo 1978-195; 1978 Tax Ct. Memo LEXIS 321; 37 T.C.M. (CCH) 843; T.C.M. (RIA) 780195; May 30, 1978, Filed Theodore W. Glocker, Jr., for the petitioner. Roger D. Osburn, for the respondent. QUEALY
MEMORANDUM OPINION QUEALY, Judge: In these cases, respondent has determined deficiencies in income tax due from petitioner as follows: Addition to Tax Under Fiscal Year
Amount § 6651(a)(1)
March 31, 1971
$54,412.67
March 31, 1972
$66,278.61
March 31, 1973
$ 2,446.99
$122.34
March 31, 1974
$96,538.00
*322 The only issue remaining for decision relates to the reporting of income (or loss) on account of a construction contract entered into by petitioner with Lincoln Neighborhood Community Association of Tallahassee, Florida, Inc. (hereinafter referred to as Lincoln). All of the facts have been stipulated and are so found. The stipulation of facts together with exhibits attached thereto are incorporated herein by this reference. The petitioner was a corporation organized under the laws of the State of Florida, with its principal place of business in Quincy, Florida. Petitioner filed its corporate income tax returns for the taxable years ending March 31, 1971 to 1974, inclusive, with the Internal Revenue Service Center, Chamblee, Georgia, and elected the completed contract method of accounting. At all times material herein, petitioner was engaged in the business of constructing commercial and multifamily residential structures. On December 7, 1970, petitioner entered into a contract with Lincoln for the construction of a low income apartment project known as "Ebony Gardens," on a cost plus basis providing for a fee of $65,236.00 with a maximum limitation on the amount payable *323 to petitioner of $1,480,296.00. Lincoln was a nonprofit corporation which owned the property upon which the apartment was to be built. Lincoln obtained financing for the project from Commonwealth Corporation through a mortgage loan insured by the Federal Housing Administration (FHA) of the Department of Housing and Urban Development (HUD). The amount of the mortgage loan was $1,970,800.00, to be advanced as the project progressed. The loan agreement and the construction contract provided that petitioner would submit monthly estimates of the work performed. Lincoln would thereupon make application to Commonwealth Corporation for periodic advances sufficient to pay the amounts due petitioner. Upon submission of petitioner's claims, there would be advanced to Lincoln and paid to petitioner an amount equal to 90 percent of the cost of the work completed, and the balance of 10 percent would be retained to be paid to petitioner upon satisfactory completion of the project. The contract further provided that the project would be completed not later than March 7, 1972, with liquidated damages of $472.99 per day for each day thereafter. FHA, as insurer of the mortgage, was authorized *324 to deduct liquidated damages from any amounts otherwise due under the contract. Due to various delays, it became impossible for the petitioner to complete the contract by March 7, 1972. Estimate No. 13 for work performed by the petitioner through March 1, 1972, was thereupon held up and was not paid until May 15, 1972. Likewise, Estimate No. 14 for work peformed by the petitioner during the month of March 1972 was not paid until June 19, 1972. Petitioner nevertheless continued to work, and Estimates Nos. 15 and 16 for work performed during the months of April and May 1972 were not processed by Lincoln for payment. On June 15, 1972, the petitioner, Lincoln and Commonwealth Corporation agreed to seek an extension of time of 200 days to complete the project. This agreement was initially submitted to FHA for approval, but before any action was taken thereon was recalled by Lincoln. Meanwhile, the funds available to Lincoln for the continuation of the project were exhausted. On July 1, 1972, Lincoln defaulted on a payment of principal and interest to Commonwealth Corporation. On July 20, 1972, petitioner ceased work on the project, which was about 96 percent complete at that *325 time. There ensued a period of claims and counterclaims between petitioner and Lincoln. On September 21, 1972, petitioner notified Lincoln of its claims and exercised its election to terminate the contract. Petitioner also invoked the provisions of the contract for the arbitration of all claims and disputes between petitioner and Lincoln. A formal request for arbitration was filed with the American Arbitration Association shortly thereafter. Once the petitioner served notice of its election to seek arbitration, a panel of arbitrators was selected by petitioner and Lincoln. After the selection of such arbitrators, by letter dated December 28, 1972, Lincoln withdrew. An arbitration hearing was held in Tallahassee on February 22, 1973, and proceeded ex parte.A suit filed by Lincoln to enjoin the proceedings was dismissed on April 17, 1973. On June 22, 1973, the arbitration tribunal awarded petitioner the sum of $175,521.00, which included the sum of $144,477.00 which had been retained pursuant to the contract and the payment of the costs submitted by the petitioner, with interest and attorneys' fees. On October 3, 1972, Commonwealth Corporation assigned the mortgage to *326 HUD. On March 19, 1973, the United States (on behalf of HUD) filed a foreclosure action against Lincoln in the United States District Court. A receiver was immediately appointed by the court. On May 7, 1973, petitioner filed a counterclaim for the accumulated retainages. On March 17, 1974, Lincoln filed a counterclaim and cross-claim against the petitioner seeking damages pursuant to the contract. On March 19, 1974, Lincoln then filed suit against the bonding company for such damages. Lincoln thereupon sought to join petitioner and the bonding company as third party defendants in the foreclosure suit. This motion was duly denied, and on August 19, 1974, a Summary Final Judgment of Foreclosure was entered against Lincoln. Thereafter, in an order dated October 15, 1975, the U.S. District Court held that HUD was liable to petitioner only for $12,411.00, reflected in Estimates Nos. 15 and 16 and was not liable for the retainages or for any other amounts. On November 7, 1975, petitioner appealed that judgment to the United States Court of Appeals for the Fifth Circuit, and as of the date of the trial that appeal was still pending. On its corporate income tax return for the *327 year ending March 31, 1973, petitioner reported a gain on the Ebony Gardens project in the amount of $82,851.00, being the difference between the ceiling on the contract and the expenses incurred to date. On its corporate income tax return for the year ending March 31, 1974, petitioner thereupon deducted as a bad debt the sum of $156,888.00, being the difference between the amount reported as profits for the prior year together with the expenses incurred on the job which had not been collected. In his notice of deficiency, the respondent has determined that the contract should be considered as "completed and accepted" within the meaning of section 1.451-3(b)(2), Income Tax Regs., during the year ending March 31, 1974, as a result of the decision of the arbitration board that petitioner was entitled to retainages, payment for unpaid work and interest. Respondent currently concedes that the sum of $82,851.00 reported by the petitioner as income from the contract in its return for the year ending March 31, 1973, was in error and should be reversed. However, respondent contends that the unrecovered costs and profits of $156,888.00 deducted as a bad debt in petitioner's income tax *328 return for the year ending March 31, 1974, was likewise deducted in error because as of that date petitioner was still pursuing its claims for a recovery or reimbursement for the amount due to it under the contract. Section 446 [1] prescribes the method of accounting for the determination of taxable income. Subsection (a) sets forth the general rule that taxable income shall be computed in accordance with the method regularly followed by the taxpayer in keeping his books. Subsection (b) empowers the respondent to adopt a different method where the taxpayer's books do not clearly reflect income. Subsection (c) provides: (c) Permissible Methods. --Subject to the provisions of subsections (a) and (b), a taxpayer may compute taxable income under any of the following methods of accounting-- (1) the cash receipts and disbursements method; (2) an accrual method; (3) any other method permitted by this chapter; or (4) any combination of the foregoing methods permitted under regulations prescribed by the Secretary or his delegate. By regulation, the respondent has recognized *329 the so-called "completed contract method" as an acceptable method of accounting in computing taxable income on account of long-term contracts, namely contracts the completion of which extends beyond one year. The parties agree that petitioner properly elected and must compute its taxable income from the Ebony Gardens project under the completed contract method of accounting. With respect thereto, section 1.451-3(b)(2), Income Tax Regs., provides as follows: [2]
(2) Completed contract method. Gross income derived from long-term contracts may be reported for the taxable year in which the contract is finally completed and accepted. Under this method, there shall be deducted from gross income for such year all expenses which are properly allocable to the contract, taking into account any material and supplies charged to the contract but remaining on hand at the time of completion. The respondent argues, somewhat ingeniously, that the contract should be considered as "completed and accepted" on June 22, 1973, when *330 the arbitration board relieved petitioner of any further obligation under the contract and awarded petitioner the sum of $175,521.00. Respondent would require petitioner to accrue the amount of the award, and to reflect income or loss on the contract as of that date. This ignores the realities of the situation. For all practical purposes, the resolution of the rights and obligations of the parties under the contract already had been taken out of the hands of the arbitration board and rested in the United States District Court. The courts may differ with respect to the degree of completion required to treat a contract as having been completed within the meaning of the regulation. C.f. Ehret-Day Co. v. Commissioner,2 T.C. 25 (1943), and E.E. Black, Limited v. Alsup,211 F.2d 879 (9th Cir. 1954). In the case before the Court, it is clear that the contract was not infact completed. Lincoln was unable to pay petitioner's claim for work done. The work was ultimately suspended and this was followed by dispute with respect to the amount owing to petitioner. Regardless of its binding effect on Lincoln, the decision of the arbitration board *331 did not resolve that dispute. It was carried over to the foreclosure proceedings. [3]
On March 19, 1973, the United States (on behalf of HUD) had filed to foreclose on the property. A receiver was appointed. On April 12, 1973, petitioner was made a party to this action. Petitioner counterclaimed for accumulated retainages. Lincoln sought to join petitioner and the bonding company as third party defendants in the foreclosure suit. Whether or not petitioner would ever receive any additional payment under the contract rested with the United States District Court. As of March 31, 1974, the matter was still pending in that court. For the same reason, however, the petitioner was not in a position as of March 31, 1974, to deduct any amount, either as a bad debt or otherwise, of the sums claimed due to it under the contract. *332 Petitioner was actively prosecuting that claim before the United States District Court in the foreclosure proceedings. It cannot be assumed that petitioner was engaged in a futile effort to collect the sums due. Whether petitioner ultimately would realize income or loss on account of the contract could not be determined pending the resolution of that claim. In view of the foregoing, the Court has no difficulty finding that petitioner erroneously accrued the sum of $82,851.00 as income from the contract in its fiscal year ending March 31, 1973. In fact, respondent concedes as much. On the other hand, the Court is unable to find that petitioner sustained a deductible loss on the contract, whether as a bad debt or otherwise, as of March 31, 1974. Petitioner had outstanding claims, not only against Lincoln but also against HUD, for work done on the project. It must be assumed that petitioner had some reasonable expectation of collecting on those claims. Until the matter was resolved, a complete accounting for the contract could not be made. While the Court does not believe that common sense would require the petitioner to accrue the amounts in dispute until the dispute was *333 settled, by the same token as long as those claims remained unresolved it could not be determined whether the petitioner would sustain a loss. (C.f. Smith v. Commissioner,66 T.C. 213 (1976.) Decisions will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954.↩
2. This regulation was adopted on December 24, 1957,T.D. 6282, 1958-1 C.B. 215↩, and was the regulation in effect for the taxable year ended March 31, 1974.
3. In this respect, the situation is not distinguishable from the facts in Smith v. Commissioner,66 T.C. 213 (1976). In the Smith↩ case, the taxpayer was chargeable only to the extent of the agreed amount actually paid. The respondent conceded that with respect to the remainder, which was in dispute, no income was realized by the taxpayer.