PENINSULA STEEL PRODUCTS & EQUIPMENT COMPANY, INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 11012–77.     Filed June 17, 1982.

*Clarence J. Ferrari, Jr.,* and *Clifford M. Govaerts,* for the petitioner.

*Thomas G. Schleier,* for the respondent.

CHABOT, *Judge*: Respondent determined deficiencies in Federal corporation income taxes against petitioner (see note 4 *infra*) as follows:

| TYE June 30— | Deficiency |
|---|---|
| 1974 | $189,267 |
| 1975 | 432,421 |

After concessions[1] by the parties, the issues for decision are:

(1) Whether petitioner reported income from long-term contracts using the completed contract method of accounting or the accrual shipment method;

(2) Whether respondent may change petitioner's method of accounting for long-term contracts, which accumulates manufacturing costs in inventory accounts; and

(3) Whether respondent may change petitioner's method of accounting for inventories from the last-in, first-out (LIFO) inventory valuation method (sec. 472[2]).

### FINDINGS OF FACT

Some of the facts have been stipulated; the stipulations and the stipulated exhibits are incorporated herein by this reference.

Petitioner is a California corporation. When the petition in this case was filed, petitioner's principal place of business was in San Jose, Calif.

In 1956, petitioner was established as a wholly owned subsidiary of Ferry Steel Products, a manufacturer of steel equipment. Pursuant to the reorganization of Ferry Steel Products, 100 percent of petitioner's stock was distributed in 1968 to three individuals of the Stirm family. In 1969, petitioner formed a wholly owned subsidiary, Monotech Corp.

---

[1] At trial, petitioner abandoned its claim for attorney's fees. The parties have reached a basis for settlement of the other issues, which relate to depreciation deductions and investment credits; this agreement is to be given effect in the computation under Rule 155.

Unless indicated otherwise, all Rule references are to the Tax Court Rules of Practice and Procedure.

[2] Unless indicated otherwise, all chapter and section references are to chapters and sections of the Internal Revenue Code of 1954 as in effect for the taxable years in issue.

(hereinafter sometimes referred to as Monotech), which is organized under California law. Petitioner and Monotech filed consolidated Federal corporation income tax returns from 1970[3] through the years in issue.[4]

During the years in issue, petitioner's and Monotech's principal business activity was the manufacture and sale of air pollution control equipment. The principal products manufactured by petitioner and Monotech were components of large pieces of equipment called "precipitators," used in industrial air pollution control systems.[5] Petitioner and Monotech also manufactured rock drills, antennas for radar equipment, and conveyor systems.

Petitioner's and Monotech's entire manufacturing process is performed at plants in San Jose, Calif., and San Antonio, Tex. All equipment and employees utilized in the manufacturing process are petitioner's or Monotech's.

Petitioner's and Monotech's products are typically manufactured pursuant to the terms of a purchase order. The purchase order usually contains a specific identification of the goods to be manufactured, the quantities, the price, the payment terms, the destination, and the shipment date. The purchase order may provide for performance of the contract to extend over more than 1 taxable year; petitioner's and Monotech's products generally do not take more than 15 months to manufacture. During the years in issue, a small percentage of purchase orders (probably less than 10 percent) provided for advance

---

[3]All references to years hereinafter are to taxable years ended June 30.

[4]Although respondent did not issue any notice of deficiency to Monotech for the years in issue, and the notice of deficiency in the instant case did not name Monotech, the parties stipulated that the term "petitioner" includes Monotech. Since a notice of deficiency was issued to Peninsula Steel Products & Equipment Co., Inc., on a consolidated basis, and it timely filed a petition to this Court, we view this stipulation as a request for us to determine petitioner's and Monotech's consolidated income tax liability for which petitioner is severally liable (sec. 1.1502–6(a), Income Tax Regs.). Thus, we need not decide whether Monotech is also a petitioner in the instant case. Compare sec. 1.1502–77(a), Income Tax Regs., and *Intervest Enterprises, Inc. v. Commissioner*, 59 T.C. 91, 96–97 (1972), with *Cincinnati Transit, Inc. v. Commissioner*, 55 T.C. 879 (1971), affd. 455 F.2d 220 (6th Cir. 1972); *Community Water Service Co. v. Commissioner*, 32 B.T.A. 164 (1935); and Rules 32(a), 34(a)(1), 61(a). See also sec. 6503(a)(2).

Except where the context of the foregoing explanation indicates otherwise, the term "petitioner" applies only to Peninsula Steel Products & Equipment Co., Inc.

[5]A typical precipitator of petitioner's or Monotech's manufacture is about 300 feet by 120 feet and about 60 feet high, and may weigh as much as several million pounds.

payments; they represented a significant portion of work performed by petitioner and Monotech.

The principal raw material used in the manufacture of products by petitioner and Monotech is "raw" steel in the form of coil, plate shape, and structural shape. Typically, the manufacturing process involves bending, rolling, punching, and cutting the raw steel into components in the needed shapes. Because of their enormous size, petitioner's and Monotech's precipitators are manufactured in stages and are shipped in kit form. The product is assembled at the customer's site and is not accepted until after it has been put together at the site. On occasion, petitioner and Monotech are required to perform additional work after the product reaches the site; such additional work might result in back charges. Petitioner and Monotech are responsible for acceptance of the product by the customer.

Petitioner's and Monotech's general purchasing policy for raw steel is to make frequent purchases, taking into consideration market fluctuations in price and in supply, as well as the desirability of maintaining good relationships with steel mills. Petitioner and Monotech usually maintain substantial stock of raw steel on hand. At times, petitioner and Monotech purchase raw steel for a particular purchase order. In that event, the job number would be designated on petitioner's or Monotech's order sent to the steel supplier. However, depending on the need for raw steel in petitioner's or Monotech's other jobs, the steel so designated might not actually be used on that job.

Because of petitioner's and Monotech's purchasing policy for raw steel and stock of raw steel on hand, petitioner and Monotech have a reputation in their industry of having a continuous supply of raw steel, thereby enabling them to manufacture orders in times of steel shortages, such as occurred during the years in issue. As a result, petitioner's and Monotech's competitive positions were enhanced. The price of raw steel fluctuated widely in the years in issue, with prices generally increasing. Approximately 60 to 65 percent of the raw steel purchased by petitioner and Monotech during the years in issue was purchased for stock on hand, and substantial amounts of raw steel were maintained on hand. Thus, it was necessary for petitioner and Monotech to maintain physical inventories of raw steel on hand.

Petitioner and Monotech maintained inventory accounts for raw materials and work in process. During the manufacturing process, costs of raw materials, labor, and overhead attributable to unfinished purchase orders (or long-term contracts) were accumulated in work-in-process inventory accounts. When performance was completed under a purchase order (or long-term contract), income was recognized and the associated costs were relieved from the inventory accounts and charged to cost of goods sold. Petitioner and Monotech did not recognize income upon receipt of advanced payments under a purchase order or long-term contract. (See note 8 and accompanying text *infra.*) Petitioner first adopted this method of accounting for 1969, and has since consistently used it.

Schedules attached to petitioner's Federal corporation income tax return for 1969,[6] and to petitioner's and Monotech's consolidated Federal corporation income tax returns for 1970, 1971, 1972, 1973, 1974, and 1975, indicate that cost of goods sold claimed therein was calculated by adding materials purchased, direct labor, and overhead to beginning inventory (including work-in-process inventory) and subtracting ending inventory (including work-in-process inventory). Thus, the costs attributable to a purchase order (or long-term contract) reduced gross receipts/sales (in computing gross profit) in the year of completion.

For 1970, 1971, 1972, and 1973, petitioner and Monotech used the lower of cost (determined on a first-in, first-out (FIFO) basis) or market method to value inventories.[7] For the years in issue, petitioner and Monotech used the last-in, first-out (LIFO) method to value inventories. A Form 970 (Application to Use LIFO Inventory Method) was filed with petitioner's and Monotech's consolidated income tax return for 1974, properly electing to use LIFO to value inventories. That application indicates that petitioner and Monotech used the dollar-value method based on one natural business unit to determine the value of LIFO inventories and the most recent purchases

---

[6]Petitioner filed an amended Federal corporation income tax return for 1969 as a result of the Congress' repeal of the investment credit. References hereinafter to petitioner's tax return for 1969 are to petitioner's tax return as originally filed for this year.

[7]Petitioner's income tax return for 1969 did not indicate the method of inventory valuation used by petitioner for that year.

method to determine the cost of the goods in closing inventories in excess of those in opening inventories. A schedule showing raw materials and work-in-process inventories for 1972, 1973, and 1974 was attached to the Form 970.

Total ending inventory balances shown on the balance sheets attached to petitioner's income tax return for 1969 and to petitioner's and Monotech's consolidated income tax returns for 1970 through 1975 are indicated in table 1.

TABLE 1

|  | Petitioner | Monotech | Consolidating adjustment | Consolidated total |
|---|---|---|---|---|
| 1969 | $205,414.50 | NA | NA | NA |
| 1970 | 271,347.92 | $146,332.36 | --- | $417,680.28 |
| 1971 | 169,333.00 | 236,152.00 | --- | 405,485.00 |
| 1972 | 437,491.00 | 228,974.00 | --- | 666,465.00 |
| 1973 | 990,146.00 | 566,681.00 | --- | 1,556,827.00 |
| 1974 | 2,195,163.57 | 981,414.32 | [1]$827,440 | 2,349,137.89 |
| 1975[2] | 1,759,637.00 | 2,932,364.00 | --- | 4,692,001.00 |

[1]A correlative adjustment in the same amount ($827,440) was made to "Other Liabilities—Progress Billings." The adjustment shown in this table was treated as a reduction in petitioner's beginning inventory for 1975. See note 8 *infra.*

[2]The parties have agreed to an adjustment decreasing petitioner's and Monotech's depreciation expense for 1975. Included in work-in-process inventories is an allocation of depreciation expense. We are unable to determine the effect, if any, of this agreed-to depreciation adjustment on ending inventories for that year.

Gross receipts/sales, cost of goods sold, and gross profit shown on petitioner's income tax return for 1969 and on petitioner's and Monotech's consolidated income tax returns for 1970 through 1973, and the ratio of gross profit to gross receipts/sales, for each of these years, are indicated in table 2.

TABLE 2

|  | 1969 | 1970 | 1971 | 1972 | 1973 |
|---|---|---|---|---|---|
| Gross receipts/sales | $2,042,362.32 | $2,626,804.01 | $3,125,248 | $3,237,152 | $3,970,163 |
| Cost of goods sold | 1,520,781.19 | 2,170,413.50 | 2,266,780 | 2,509,329 | 3,061,519 |
| Gross profit | 521,581.13 | 456,390.51 | 858,468 | 727,823 | 908,644 |
| Ratio of gross profit to gross receipts/sales | 25.5% | 17.4% | 27.5% | 22.5% | 22.9% |

Gross receipts/sales, cost of goods sold, and gross profit shown on petitioner's and Monotech's consolidated income tax returns and as determined by respondent, and the ratio of gross profit to gross receipts/sales, for the years in issue are indicated in table 3.

TABLE 3

| | 1974 | | 1975 | |
| --- | --- | --- | --- | --- |
| | Per return | Determined | Per return | Determined |
| Gross receipts/sales | $5,907,368.41 | $5,907,368.41 | $7,157,547 | $7,157,547 |
| Cost of goods sold[1] | 4,814,962.45 | 4,420,655.45 | 5,771,654 | 5,058,644 |
| Gross profit | 1,092,405.96 | 1,486,712.96 | 1,385,893 | 2,098,903 |
| Ratio of gross profit to gross receipts/sales | 18.5% | 25.2% | 19.4% | 29.3% |

[1]We are also unable to determine the effect, if any, of the parties' agreed-to depreciation adjustment on cost of goods sold for 1975. See note 2 to table 1 *supra.*

No statements were attached to petitioner's (or petitioner's and Monotech's consolidated) income tax returns for 1969 through 1975 which indicate that income was reported using the completed contract method or any other long-term contract method. However, the balance sheets attached to petitioner's (or petitioner's and Monotech's consolidated) income tax returns for some of these years show unearned revenue as a liability account.[8]

Additions in the amounts of $394,307 and $713,010 were made to the consolidated LIFO reserve of petitioner and Monotech for 1974 and 1975, respectively. These amounts were used by petitioner to compute consolidated cost of goods sold for the respective year in issue. The consolidated LIFO reserve was reduced by $206,097 for 1976.

Respondent disallowed the above-described additions to petitioner's and Monotech's consolidated LIFO reserve in full, based on the following explanation:

[8]Unearned revenue shown on Schedule L of petitioner's (or petitioner's and Monotech's consolidated) income tax returns is as follows:

| | Petitioner | Monotech | Consolidating adjustment | Consolidated total |
| --- | --- | --- | --- | --- |
| 1969 | --- | NA | NA | NA |
| 1970 | $96,620.98 | $87,000 | --- | $183,620.98 |
| 1971 | --- | --- | --- | --- |
| 1972 | 101,042.00 | 232,947 | --- | 333,989.00 |
| 1073 | 914,700.00 | 379,718 | --- | 1,294,418.00 |
| 1974[1] | 2,784,496.00 | 827,440 | [2]$827,440 | 2,784,496.00 |
| 1975[3] | 2,366,248.00 | 3,962,561 | --- | 6,328,809.00 |

[1]Identified as "PROGESS BILLINGS."
[2]A correlative adjustment was made to the combined inventory accounts. See note 1 to table 1 *supra.*
[3]Identified as "Unearned revenue on contract billings."

(f) In a number of instances you used the completed contract method of reporting income. You applied the LIFO method of valuing inventory in computing the cost of those contracts. It is determined that the LIFO method of valuing inventory may not be applied under the completed contract method of accounting. The resulting adjustment to the costs of these contracts results in decreases in costs of goods sold in the years ended June 30, 1974 and June 30, 1975 and an increase in the cost of goods sold for the year ended June 30, 1976, in accordance with the following summary:

|  | Yearend 6/30/74 | Yearend 6/30/75 | Yearend[9] 6/30/76 |
| --- | --- | --- | --- |
| Ending LIFO reserve | $394,307 | $1,107,317 | $901,220 |
| Less: Beginning LIFO reserve | 0 | 394,307 | 1,107,317 |
| Adjustment | 394,307 | 713,010 | (206,097) |

In any event, you may not apply the LIFO method of valuing inventories under the completed contract method of accounting as the property to which you applied it was not owned by you at the time of its application to that property.[10]

Petitioner's method of accounting, recognizing income and expenses when a contract is completed, is not consistent with the accrual shipment method of accounting.

Petitioner's method of accounting, using inventory accounts to accumulate costs of long-term contracts, clearly reflects petitioner's and Monotech's consolidated income.

Petitioner's method of accounting for inventories, using the LIFO valuation method, also clearly reflects petitioner's and Monotech's consolidated income.

### OPINION

Respondent asserts that petitioner utilized the completed contract method of accounting for Federal income tax purposes and, under section 1.451–3, Income Tax Regs., petitioner (1) is not permitted to consider inventories in computing petitioner's and Monotech's long-term contract costs, and (2) is not permitted to compute these costs using the LIFO method of inventory valuation. Respondent contends that the use of an inventory method and LIFO to compute and value long-term contract costs is in direct conflict (or "mutually exclusive")

---

[9]The year 1976 is not in issue herein because no deficiency was determined for this year. Sec. 6214(a).

[10]At trial, respondent abandoned his inventory ownership contention.

with the deferral of such costs under the completed contract method; also, he states that the use of LIFO results in the deduction of long-term contract costs before the year the contract is completed.

Petitioner asserts that it properly reported consolidated income from long-term contracts under the accrual shipment method, pursuant to section 1.451–5, Income Tax Regs., rather than under the completed contract method, and accordingly, petitioner and Monotech are required to maintain inventories and permitted to value their inventories using LIFO. Alternatively, petitioner asserts that, if petitioner's method of accounting for long-term contracts is considered to be the completed contract method and petitioner must defer costs associated with long-term contracts pursuant to section 1.451–3, Income Tax Regs., then petitioner and Monotech nevertheless should be permitted to (1) maintain inventories to defer their long-term contract costs and utilize LIFO to value these inventories, or (2) use LIFO to value their long-term contract costs regardless of whether such costs are considered to be inventory. In conjunction with each of its assertions, petitioner contends that its methods of accounting for long-term contract costs, however characterized, were consistently applied, clearly reflected consolidated income, and therefore cannot be changed by respondent.

We agree with respondent that petitioner did not use the accrual shipment method of accounting. We agree with petitioner's first alternative assertion that petitioner's and Monotech's use of inventories and LIFO were proper under the circumstances of the instant case.

As we understand the factual situation, when petitioner or Monotech shipped a precipitator to a customer, much often remained to be done. Determination as to whether the product met the customer's specifications awaited at least on-site assembly. We are persuaded that recognition of profit and loss under petitioner's and Monotech's method of accounting did not occur on shipment (as would have been the case under the accrual shipment method of accounting), but rather occurred on completion of the contract. Accordingly, we hold that petitioner and Monotech used the completed contract method of accounting.

Under the completed contract method of accounting, recog-

nition of cost of goods sold is deferred until the time when income from the contract is to be recognized. Where it is unfeasible to determine cost of goods sold by identifying the specific cost of each item of raw materials, it is appropriate to apply inventories to determine the amount of cost of goods sold. Respondent's regulations do not forbid such a use of inventories, nor do they provide an alternative method. One of respondent's rulings uses language which appears to forbid the use of inventories, but does not suggest an alternative method. We hold that the use of inventories is compatible with the completed contract method and that, in the instant case, this use clearly reflects petitioner's and Monotech's income.

For the years before the Court, petitioner and Monotech used the LIFO method to value their inventories and determine their cost of goods sold. They complied with the requirements of section 472 in their use of LIFO. We hold that their use of LIFO clearly reflects petitioner's and Monotech's income.

The remainder of this opinion discusses, in order, each of the foregoing elements of our analysis.

## 1. Petitioner's Overall Method of Accounting for Long-Term Contracts

Respondent's contention that petitioner may not use inventories, and in particular, LIFO, to compute and value long-term contract costs is premised on his determination that petitioner used the completed contract method of accounting for petitioner's and Monotech's long-term contracts. Petitioner, on the other hand, asserts that it reported income from long-term contracts using the accrual shipment method of accounting[11] pursuant to section 1.451–5, Income Tax Regs., that inventories must be maintained under such an accrual method, and that these inventories may be valued using LIFO.

We must first decide whether petitioner reported income

---

[11]Petitioner focuses only on its method qualifying as an accrual method under sec. 1.451–5(b)(3), Income Tax Regs. (see note 15 *infra*), because it accrued income when, and accumulated costs until, "its goods are finally shipped"; petitioner does not contend that its method qualifies under the regulation's reference to accruals as of the time "the subject matter of the contract is * * * accepted." Under the circumstances, we do not consider what the posture of the instant case would have been if petitioner had contended, at an appropriate time, that it followed the accrual acceptance method.

from long-term contracts using the completed contract method of accounting or the accrual shipment method. This issue depends on the resolution of a factual dispute between the parties as to when petitioner recognized income from long-term contracts for tax purposes.[12] *Daley v. United States,* 243 F.2d 466, 471 (9th Cir. 1957).

Under the completed contract method of accounting, the gross contract price of each long-term contract is included in the taxpayer's gross income for the taxable year in which that contract is finally completed and accepted. Secs. 1.451–3(d)(1), 1.451–3(b)(2), Income Tax Regs.;[13] *C. H. Leavell & Co. v. Commissioner,* 53 T.C. 426, 436–437 (1969).

Respondent's determination in the notice of deficiency that petitioner reported consolidated income from long-term contracts using the completed contract method of accounting is presumptively correct, and petitioner bears the burden of proving it reported consolidated income using another method of accounting. *Welch v. Helvering,* 290 U.S. 111 (1933); Rule 142(a). Petitioner has failed to prove that it reported consolidated income using the accrual shipment method of accounting.[14]

Petitioner contends that it recognized income when final shipment of the product was made to the customer and therefore it used the "accrual shipment method of accounting." Petitioner relies on section 1.451–5(b)(3), Income Tax Regs.,[15] which permits a taxpayer using an accrual method of

---

[12]There may be differences between the timing of revenue recognition under the completed contract method and the accrual shipment method. Generally, under the completed contract method, no revenue is included in gross income until the entire long-term contract is completed and accepted. Under the accrual shipment method, revenues must be included in gross income upon shipment of units under a contract. Thus, if there is a contract to manufacture several items and some completed items are shipped before other items are completed, income would be recognized under the accrual shipment method before it would be recognized under the completed contract method. See Pye, "Inventories and Long-Term Contracts," 55 Taxes 163 (1977); Schneider, "Tax Planning For Long-Term Contractors and Manufacturers Under New Final Regs.," 44 J. of Tax. 210, 211–213 (1976).

[13]As amended by T.D. 7397, filed Jan. 14, 1976, 1976–1 C.B. 115.

[14]In view of our conclusion as to petitioner's method of reporting income, we do not decide petitioner's arguments which are based on the use of the accrual shipment method.

[15]Sec. 1.451–5. Advance payments for goods and long-term contracts.

(b) *Taxable year of inclusion.* * * *

 \*     \*     \*     \*     \*     \*     \*

(3) In the case of a taxpayer accounting for advance payments for tax purposes pursuant to a long-term contract method of accounting under section 1.451–3, or of a taxpayer

accounting that accrues income when, and accumulates costs until, the subject matter of the contract is shipped, to defer income recognition of advance payments on long-term contracts until the subject matter is shipped. See *Rockwell International Corp. v. Commissioner*, 77 T.C. 780, 804 n. 12 (1981), on appeal (3d Cir., Jan 12, 1982).

The pleadings and stipulations in the instant case, however, reflect an apparent agreement of the parties that petitioner reported income when a purchase order (or contract) was completed.[16]

In addition, petitioner failed to present evidence establishing a relationship between the date of shipment and the time of income recognition in the instant case. On the contrary, the record is replete with evidence indicating that shipment of petitioner's or Monotech's product was not the critical event for determining when a purchase order (or contract) was completed and hence, for triggering recognition of income. Petitioner's and Monotech's products were shipped in kit form because of their enormous size. Only after the product was assembled at the site could it be determined if the product conformed to the terms of the purchase order (or contract). On occasion, petitioner and Monotech were required to perform additional work after the product had reached the jobsite. The product was not accepted by the customer until it was assembled at the site and further work was performed by petitioner or Monotech, if necessary. Thus, it appears that there might often have been a substantial timelag between the shipment date and the date performance of the contract was

---

accounting for advance payments with respect to a long-term contract pursuant to an accrual method of accounting referred to in the succeeding sentence, advance payments shall be included in income in the taxable year in which properly included in gross receipts pursuant to such method of accounting (without regard to the financial reporting requirement contained in subparagraph (1)(ii)(a) or (b) of this paragraph). An accrual method of accounting to which the preceding sentence applies shall consist of any method of accounting under which the income is accrued when, and costs are accumulated until, the subject matter of the contract is shipped, delivered, or accepted.

See also sec. 1.446–1(c)(1)(ii), Income Tax Regs.

[16]In its petition, petitioner alleged that it "elected to report its income under the completed contract method of accounting pursuant to Treasury Regulations sec. 1.451–3 and applied last-in first-out (LIFO) method of valuing inventory in computing the cost of these contracts." Respondent agreed with this allegation in his answer. Furthermore, the parties have stipulated that, "During the years at issue, gross income derived from long-term contracts was reported by petitioner for tax purposes when the contracts were completed."

completed. Also of significance is the fact that petitioner and Monotech remained responsible for the acceptance of the product by the customer. These facts show that a purchase order (or contract) was completed when the product was accepted by the customer, not when the product was shipped. Since the parties agree that income was recognized when a purchase order (or contract) was completed, it follows that petitioner recognized income when the product was accepted by the customer.

Petitioner points to the following in support of its accrual shipment method argument: (1) The testimony of petitioner's expert witness, Neal Harding (hereinafter referred to as Harding), a certified public accountant and partner in the accounting firm that prepared petitioner's income tax returns from 1969 through the years in issue, that petitioner "utilized the accrual method of accounting, accounting for the advanced payments received for its long term contracts, under the rules of * * * Regulation 1.451–5," and (2) petitioner's income tax return for 1969 and petitioner's and Monotech's consolidated income tax returns for 1970 through 1973 show that inventories were maintained in each of these years and contain no reference to the completed contract method. Neither of these contentions is persuasive. Harding's bare assertion at trial that petitioner uses the accrual method is insufficient to establish petitioner's use of the accrual shipment method in the absence of evidence showing that income was accrued at the time of shipment, especially in light of the contradictory evidence in the record discussed *supra*.[17] Similarly, the failure to attach statements[18] to petitioner's (or petitioner's and Monotech's consolidated) income tax returns indicating that income from long-term contracts was reported using the

---

[17]We note that Harding's testimony as to petitioner's method of accounting provides greater support to respondent's determination. Harding testified as follows:

"In their [petitioner's and Monotech's] particular manufacturing process, the delivery of goods to a customer and the subsequent requirement to have frequent back charges, to either make that item work on the job site, almost precludes them from knowing what their revenue would be from a margin standpoint, until the job is actually completed, accepted by the customer, and the revenue is then, at that point, and the cost is then determined from a total standpoint, reflected in income for tax purposes."

[18]See sec. 1.451–3(a)(2), Income Tax Regs.

completed contract method does not convince us that petitioner did not use the completed contract method.[19]

Under these circumstances, we conclude that petitioner has failed to prove it used the accrual shipment method of accounting to report consolidated income during the years in issue. Indeed, the reasonable inference from the record is that petitioner used the completed contract method for these years. *Stephens Marine, Inc. v. Commissioner*, 430 F.2d 679, 687 (9th Cir. 1970), affg. a Memorandum Opinion of this Court;[20] *L. A. Wells Construction Co. v. Commissioner*, 46 B.T.A. 302, 306 (1942), affd. 134 F.2d 623 (6th Cir. 1943); *Fort Pitt Bridge Works v. Commissioner*, 24 B.T.A. 626, 641–642 (1931), affd. on this point 92 F.2d 825, 827 (3d Cir. 1937). Accordingly, for purposes of the instant case (see note 11 *supra*), the completed contract method of accounting is considered to be petitioner's method, as was determined in the notice of deficiency.

## 2. Use of Inventories Under the Completed Contract Method

We next consider whether respondent is permitted to change petitioner's method of accounting for the costs associated with petitioner's and Monotech's long-term contracts.

Respondent maintains that, as a matter of law,[21] an inventory method may not be used under the completed contract method of accounting, and therefore petitioner's method of accounting for long-term contract costs does not clearly reflect income. In support thereof, respondent relies on Rev. Rul. 59–329, 1959–2 C.B. 138, and sections 1.451–3 and 1.471–10, Income Tax Regs. Petitioner contends that it properly computed contract costs using an inventory method because (1) inventories are required under section 471 and under sections 1.471–1 and 1.446–1(c), Income Tax Regs., (2) the completed contract method of accounting and the use of inventories are not mutually exclusive, (3) inventories have consistently been

---

[19]See 2. Use of Inventories Under the Completed Contract Method, *infra*, for discussion of petitioner's inventory argument.

[20]T.C. Memo. 1969–39.

[21]Respondent gave this as his reason for presenting no witnesses. Respondent did not cross-examine petitioner's witnesses.

used by petitioner and Monotech and this method clearly reflects their consolidated income, and (4) respondent abused his discretion in changing petitioner's method.

We agree with petitioner's conclusion.

Section 446(a)[22] provides the general rule that taxable income is to be computed using the method of accounting under which the taxpayer regularly computes income in keeping his books.

Certain permissible accounting methods are enumerated in section 446(c)[23] and the regulations thereunder. In addition to these methods, special methods of accounting for long-term contracts are provided in sections 1.451–3 and 1.451–5, Income Tax Regs. Sec. 1.446–1(c)(1)(iii), Income Tax Regs. Thus, in general, a taxpayer may compute income from long-term contracts using the following overall methods: (1) Cash, (2) accrual, including the so-called accrual shipment method, (3) percentage of completion, (4) completed contract, or (5) a combination of the foregoing (but see sec. 1.446–1(c)(1)(iv), Income Tax Regs.).

The term "method of accounting" includes the overall method of accounting used by the taxpayer as well as the accounting treatment of any material item. Sec. 1.446–1(a)(1), Income Tax Regs. Petitioner's use of inventories to account for the costs associated with long-term contracts is a method of accounting.[24]

The general rule with respect to methods of accounting is reflected in section 1.446–1(a)(2), Income Tax Regs., as follows:

---

[22]SEC. 446. GENERAL RULE FOR METHODS OF ACCOUNTING.

(a) GENERAL RULE.—Taxable income shall be computed under the method of accounting on the basis of which the taxpayer regularly computes his income in keeping his books.

[23]SEC. 446. GENERAL RULE FOR METHODS OF ACCOUNTING.

(c) PERMISSIBLE METHODS.—Subject to the provisions of subsections (a) and (b), a taxpayer may compute taxable income under any of the following methods of accounting—

   (1) the cash receipts and disbursements method;
   (2) an accrual method;
   (3) any other method permitted by this chapter; or
   (4) any combination of the foregoing methods permitted under regulations prescribed by the Secretary or his delegate.

The subsequent amendment of this provision by sec. 1906(b)(13) [sic] (A) of the Tax Reform Act of 1976, Pub. L. 94–455, 90 Stat. 1834, does not affect the taxable years before us.

[24]Whether or not it is a permissible method does not change its status as an accounting method. See *H. F. Campbell Co. v. Commissioner*, 53 T.C. 439, 447 (1969), affd. 443 F.2d 965 (6th Cir. 1971); *Fruehauf Trailer Co. v. Commissioner*, 42 T.C. 83, 102–105 (1964), affd. 356 F.2d 975 (6th Cir. 1966); sec. 1.446–1(e)(2)(ii)(*b*), Income Tax Regs.

Sec. 1.446–1. General rule for methods of accounting.

(a) *General rule.* * * *

(2) It is recognized that no uniform method of accounting can be prescribed for all taxpayers. Each taxpayer shall adopt such forms and systems as are, in his judgment, best suited to his needs. However, no method of accounting is acceptable unless, in the opinion of the Commissioner, it clearly reflects income. A method of accounting which reflects the consistent application of generally accepted accounting principles in a particular trade or business in accordance with accepted conditions or practices in that trade or business will ordinarily be regarded as clearly reflecting income, provided all items of gross income and expense are treated consistently from year to year.

If a taxpayer's method of accounting does not clearly reflect income, then respondent may choose to compute taxable income under a method of accounting that does clearly reflect the taxpayer's income (sec. 446(b)[25] ). Respondent possesses broad discretion in determining whether an accounting method clearly reflects income. *Commissioner v. Hansen*, 360 U.S. 446, 467 (1959). Even though an accounting method may be in accordance with generally accepted accounting principles, the requirement that the accounting method clearly reflect income is paramount. *Thor Power Tool Co. v. Commissioner*, 439 U.S. 522, 538–544 (1979).

Section 446(b) affords respondent more than the usual presumption of correctness in support of his determination that a method of accounting does not clearly reflect income, and it is not within the province of the Court to weigh and determine the relative merits of accounting methods. *United States v. Catto*, 384 U.S. 102, 114 (1966). In such matters, respondent's determination is not to be set aside unless it is shown to be plainly arbitrary or there has been a clear showing that respondent's determination was an abuse of discretion. *Stephens Marine, Inc. v. Commissioner*, 430 F.2d at 686; *Baird v. Commissioner*, 68 T.C. 115, 131 (1977). The taxpayer, therefore, has a heavy burden in overcoming a finding by respondent that its method of accounting does not

---

[25]SEC. 446. GENERAL RULE FOR METHODS OF ACCOUNTING.

(b) EXCEPTIONS.—If no method of accounting has been regularly used by the taxpayer, or if the method used does not clearly reflect income, the computation of taxable income shall be made under such method as, in the opinion of the Secretary or his delegate, does clearly reflect income.

The subsequent amendment of this provision by sec. 1906(b)(13) [sic] (A) of the Tax Reform Act of 1976, Pub. L. 94–455, 90 Stat. 1834, does not affect the taxable years before us.

clearly reflect income. However, if the taxpayer succeeds in showing that the method it chose clearly reflects its income, then respondent does not have discretion to disturb that choice. *Bay State Gas Co. v. Commissioner*, 75 T.C. 410, 417, 423 (1980), on appeal (1st Cir., Oct. 13, 1981); see *Photo-Sonics, Inc. v. Commissioner*, 357 F.2d 656, 658 n. 1 (9th Cir. 1966), affg. 42 T.C. 926 (1964).

Whether a particular method of accounting clearly reflects income is primarily a question of fact (see note 21 *supra*) and will vary greatly from business to business and from factual situation to factual situation. *Sam W. Emerson Co. v. Commissioner*, 37 T.C. 1063, 1067 (1962). Ordinarily, a method of accounting which is in accordance with generally accepted accounting principles will be regarded as clearly reflecting income for tax purposes if it is used consistently and if the taxpayer continues in existence. Sec. 1.446–1(a)(2), Income Tax Regs.; *Sam W. Emerson Co. v. Commissioner*, 37 T.C. at 1067–1068. However, an accounting method which conforms to generally accepted accounting principles but does not comply with respondent's regulations may not clearly reflect income. *Thor Power Tool Co. v. Commissioner, supra; Rockwell International Corp. v. Commissioner, supra*. Where there is a choice of alternative methods of accounting with no suggestion that the method adopted is impermissible from an accounting standpoint, and the method is substantially in accord with the regulations, great weight (although not necessarily controlling weight) will be given to consistency. *Sam W. Emerson Co. v. Commissioner*, 37 T.C. at 1068; *Ezo Products Co. v. Commissioner*, 37 T.C. 385, 391 (1961); *Klein Chocolate Co. v. Commissioner*, 36 T.C. 142, 146 (1961); *Geometric Stamping Co. v. Commissioner*, 26 T.C. 301, 304 (1956); sec. 1.471–2(b), Income Tax Regs.

We have found that petitioner's and Monotech's use of inventories to determine the costs associated with long-term contracts under the completed contract method clearly reflected consolidated income during the years in issue. Accordingly, we conclude that petitioner has met its extraordinary burden under the circumstances of the instant case.

As discussed *supra* (1. Petitioner's Overall Method of Accounting for Long-Term Contracts), petitioner used the com-

pleted contract method to report consolidated income from long-term contracts during the years in issue.[26] The purpose of the completed contract method is to account for the entire results of a contract at one time. *National Contracting Co. v. Commissioner*, 37 B.T.A. 689, 702 (1938), affd. 105 F.2d 488 (8th Cir. 1939). Accordingly, income is recognized under this method for the taxable year in which the contract is finally completed and accepted, and deduction of costs[27] properly allocable to the contract is deferred until such time as the income is recognized. Sec. 1.451–3(d)(1), Income Tax Regs.;[28] *McMaster v. Commissioner*, 69 T.C. 952 (1978). In *Fort Pitt Bridge Works v. Commissioner*, 24 B.T.A. at 641, we described the completed contract method as follows:

The accounting system employed by the petitioner is the completed-contract system. It is a modification of a strict accrual method and differs in the one respect that items of income and expense, though recorded in primary accounts when accrued or incurred, are not carried into profit and loss as earnings of the business until the contract to which they relate is completed. A separate account is kept for each contract. Any debit balance in the account represents the investment in the contract and any credit balance represents unearned income until the completion of the contract. A characteristic of this system is that income earned in one accounting period may not be accounted for until a later period. It is peculiarly adapted to a business fulfilling contracts which lap over accounting periods where the ultimate gain or loss can not be accurately determined until the completion of the contract. It may be used even though the contracts call for payment on

---

[26]Respondent's regulations dealing with the completed contract method were amended in 1976 to expressly allow manufacturers to use this method. T.D. 7397, filed Jan. 14, 1976, 1976–1 C.B. 115; *Rockwell International Corp. v. Commissioner*, 77 T.C. 780, 804 n. 12 (1981), on appeal (3d Cir., Jan. 12, 1982). We note that there was judicial authority supporting the use of the completed contract method by a manufacturer before this amendment. See *Stephens Marine, Inc. v. Commissioner*, 430 F.2d 679 (9th Cir. 1970); *McMaster v. Commissioner*, 69 T.C. 952 (1978); *Fort Pitt Bridge Works v. Commissioner*, 24 B.T.A. 626 (1931). Respondent does not challenge the propriety of such use by petitioner.

[27]Such costs include direct material and labor costs and certain indirect costs. Sec. 1.451–3(d)(5), Income Tax Regs.

[28]Sec. 1.451–3. Long-term contracts.

(d) *Completed contract method.*—(1) IN GENERAL. Except in cases to which subparagraph (2), (3), or (4) of this paragraph applies, under the completed contract method, gross income derived from long-term contracts must be reported by including the gross contract price of each contract in gross income for the taxable year in which such contract is completed (as defined in paragraph (b)(2) of this section). All costs which are properly allocable to a long-term contract (determined pursuant to subparagraph (5) of this paragraph) must be deducted from gross income for the taxable year in which the contract is completed. In addition, account must be taken of any material and supplies charged to the contract but remaining on hand at the time of completion.

the basis of a certain price per pound. The contracts need not run for more than a year. The Commissioner's regulations permit its use. It has been approved, for tax purposes, by the courts and by this Board.

See also *C. H. Leavell & Co. v. Commissioner*, 53 T.C. at 437; *L. A. Wells Construction Co. v. Commissioner*, 46 B.T.A. at 306–307. See generally 2 J. Mertens, Law of Federal Income Taxation sec. 12.134, at 536–540 (1974).

Petitioner and Monotech are manufacturers of large products, typically made to conform to the customer's specifications. Because of their enormous sizes, these products are manufactured in components and shipped in kit form. Only after assembly at the customer's site can it be determined that the product conforms to the customer's specifications; at times, petitioner and Monotech are required to perform additional work at the site before the customer accepts the product. A significant portion of the work performed by petitioner and Monotech during the years in issue related to long-term contracts requiring advance payments during the course of manufacturing. From an overall standpoint, it is difficult for petitioner and Monotech to accurately estimate the total costs of performing a long-term contract until the customer accepts the product. We believe (and respondent does not dispute) that the completed contract method of accounting is particularly useful for matching revenue and expenses under these circumstances. *Fort Pitt Bridge Works v. Commissioner, supra.*

Similarly, we believe petitioner's and Monotech's use of inventories to account for raw materials and work in process was proper under the circumstances of the instant case.

*Firstly*, petitioner and Monotech maintain large quantities of steel on hand which is not purchased for specific jobs; during the years in issue, approximately 60 to 65 percent of the steel purchased was for stock on hand. This substantial quantity of raw steel on hand is considered a key to petitioner's and Monotech's competitive positions, since, as a result, they have a continuous supply of steel and are able to manufacture in times of steel shortages. Although raw steel was sometimes purchased for a particular purchase order (or contract), the steel so designated might not actually be used on that job. The price of steel fluctuated widely during the years in issue. Undoubtedly, it would be unfeasible to determine the cost of each piece of steel used by petitioner and Monotech on each

job. Practical considerations would seem to dictate the use of inventories to accumulate the costs of raw materials on hand and the costs properly allocable to work in process in an orderly manner until the appropriate time to match expenses with revenue. Indeed, as far as we can tell, respondent's own adjustments in the notice of deficiency contemplate the use of inventories, although these adjustments apparently value the inventories on a FIFO basis.

*Secondly*, we believe petitioner's and Monotech's use of inventories is not inconsistent with the completed contract method of accounting. Petitioner and Monotech accumulate the costs of raw materials,[29] labor, and overhead attributable to purchase orders (or contracts) in work-in-process inventory accounts. When performance of a particular purchase order (or contract) is completed, the associated costs are removed from the work-in-process inventory accounts and charged to cost of goods sold. At the same time, income from the purchase order (or contract), including any unearned revenue previously billed or received, is recognized in full. Costs of raw materials on hand and costs attributable to purchase orders (or contracts) that are incomplete or in process at yearend remain in inventory accounts (i.e., either in raw materials inventories or in work-in-process inventories) to be deducted in a later year. In our view, the matching of income and expenses in this matter is consistent with the completed contract method of accounting since the entire results of a contract are accounted for in the taxable year in which the contract is completed. Petitioner's expert witness, Harding, testified that petitioner's method of accounting, using inventories, clearly reflected consolidated income because it properly matched income and expenses. Respondent has not contended herein that the use of inventories under the circumstances of the instant case is not in accordance with the best available accounting practice for similar manufacturers.[30] Our calcula-

---

[29]See note 32 *infra* for the computation of cost of raw materials attributable to purchase orders (or contracts).

[30]We note that the American Institute of Certified Public Accountants (hereinafter referred to as AICPA has suggested that when a contractor using the completed contract method incurs an excess of accumulated costs over related billings, the asset account be described as "costs of uncompleted contracts in excess of related billings" rather than as

tions of ratios of gross profit to gross receipts/sales based on amounts shown·on petitioner's (or petitioner's and Monotech's consolidated) income tax returns (see tables 2 and 3 *supra* ) do not reveal any significant distortions of income from petitioner's choices of accounting methods.

*Thirdly*, it is evident from petitioner's (or petitioner's and Monotech's consolidated) income tax returns from 1969 through the years in issue that revenue had been billed or received but not recognized for tax purposes (see note 8 *supra* ) and that petitioner and Monotech consistently maintained inventories (see table 1 *supra* ) and used the inventory figures to compute cost of goods sold. We find this consistent use of inventories is a factor weighing heavily in petitioner's favor. Secs. 1.446–1(a)(2), 1.471–2(b), Income Tax Regs.

*Fourthly*, we do not think that the use of inventories by petitioner and Monotech is at variance with, or contrary to, respondent's regulations dealing with the completed contract method of accounting (secs. 1.451–3(a)(1), 1.451–3(d), Income Tax Regs.). Nothing therein prohibits the use of inventories nor states how the costs of long-term contracts are to be deferred (until income is recognized). These regulations do not require that when material costs are assigned to a job, they must be assigned at a value equal to the cost of the material bought first in time, the cost of material most recently

---

"inventory" or "work in process." AICPA, Accounting Research Bulletin No. 45, "Long-Term Construction-Type Contracts" par. 12 (1955), reprinted in 2 APB Accounting Principles 6071–6073 (1973). More recently, the AICPA issued Statement of Position 81–1, "Accounting for Performance of Construction-Type and Certain Production-Type Contracts" (dated July 15, 1981) (hereafter SOP 81–1), appended to AICPA, Audit and Accounting Guide, "Construction Contractors" 105–149 (1981), to provide guidance on the application of ARB 45. Par. 71, SOP 81–1, stated:

"71. Income is recognized over the term of the contract under the percentage-of-completion method or is recognized as units are delivered under the units-of-delivery modification and is deferred until performance is substantially complete under the completed-contract method. *None of the characteristics peculiar to those methods, however, require accounting for contract costs to deviate in principle from the basic framework established in existing authoritative literature applicable to inventories or business enterprises in general.* [Emphasis added.]"

AICPA, Audit and Accounting Guide, "Construction Contractors" 139 (1981). Also appended to this audit and accounting guide are sample financial statements for a heating and air-conditioning contractor using the completed contract method, showing inventories for heating and air-conditioning components, and for parts and supplies, but without showing in detail the method of computing contract costs using these inventories. AICPA, Audit and Accounting Guide, "Construction Contractors" 199–205, app. 8 (1981).

purchased, or the cost of material specifically identified with the contract. In fact, section 1.451–3, Income Tax Regs., is concerned primarily with the timing of income recognition for long-term contracts and with the object that income and expense recognition coincide; it does not deal at all with methods of accumulating the costs attributable to long-term contracts.

Respondent contends that a taxpayer utilizing the completed contract method must value its contract costs in accordance with the provisions of section 1.451–3, Income Tax Regs., as opposed to using inventories under section 471. Respondent's position is not based on any factual analyses. (See note 21 *supra*.) Instead, respondent maintains that the following three provisions of the Treasury Regulations clearly indicate that the completed contract method of accounting and any inventory method of accounting are mutually exclusive methods as a matter of law:

Sec. 1.451–3. Long-term contracts.

(d) *Completed contract method*—(1) *In general.* * * * All costs which are properly allocable to a long-term contract (determined pursuant to subparagraph (5) of this paragraph) must be deducted from gross income for the taxable year in which the contract is completed. * * *

Sec. 1.451–3. Long-term contracts.

(a) *In general.* (1) * * * For example, if a manufacturer of heavy machinery has special-order contracts of a type that generally take 15 months to complete and also has contracts of a type that generally take 3 months to complete, the manufacturer may use a long-term contract method for the 15-month contracts and a proper inventory method pursuant to section 471 and the regulations thereunder for the 3-month contracts. * * *

Sec. 1.471–10. Applicability of long-term contract methods.

For optional rules providing for application of the long-term contract methods to certain manufacturing contracts, see sec. 1.451–3.

We disagree with respondent's conclusions. *Firstly*, none of the regulatory provisions on which respondent relies states that inventories in general are inconsistent with the completed contract method of accounting. If respondent wishes to achieve that result, the regulations (which were revised retroactively in 1976 (see *Smith v. Commissioner*, 66 T.C. 213, 219 (1976); notes 13 & 26 *supra*)) could have been written or amended to so provide. See *Henry C. Beck Builders, Inc. v. Commissioner*, 41 T.C. 616, 621, 628–629 (1964). *Secondly*, these regulatory provisions do not lead by necessary implication to

the result respondent seeks. Section 1.451–3(d)(1), Income Tax Regs., requires deferral of deductions until the taxable year in which the contract is completed. This *timing* rule does not necessarily conflict with the use of inventories to determine the *amounts* of the deductions. See *American Can Co. v. Bowers*, 35 F.2d 832, 835 (2d Cir. 1929). The other two regulations on which respondent relies merely indicate that the inventory concepts of the section 471 regulations are to be subordinate to the concepts of section 1.451–3, Income Tax Regs., where there are conflicts. The timing concepts involved in section 1.451–3(d)(1), Income Tax Regs., furnish an example of such a potential conflict. However, the long-term contract regulations do not require in all events any particular method of determining the amount of the raw materials component of cost of goods sold. We do not find, and respondent has not pointed us to, any conflict between the two sets of regulations as to the timing matter here in dispute. *Thirdly*, respondent has suggested no policy consideration that might lead us to conclude that the regulations should be interpreted as forbidding the use of inventories in connection with the completed contract method of accounting.

Respondent also relies on Rev. Rul. 59–329, *supra*, which states, in part, as follows:

> A taxpayer who, under section 1.451–3 of the Income Tax Regulations, reports income from long-term contracts on the completed contract method may not consider as inventory, for Federal income tax purposes, the cost of materials, labor, supplies, depreciation, taxes, etc., accumulated with respect to such contracts. Such costs merely represent deferred expenditures which are to be treated as part of the cost of the particular contract and are to be allowed as a deduction for the year during which the contract is completed and the contract price reported as gross income. See Revenue Ruling 288, C.B. 1953–2, 27, at 28; I.T. 3434, C.B. 1940–2, 90; and A.R.R. 8367, C.B. III–2, 57 (1924). * * * [Rev. Rul. 59–329, 1959–2 C.B. 138.]

Each of the rulings cited in Rev. Rul. 59–329 deals with whether, under the completed contract method, certain expenses (salaries, depreciation, payroll taxes, or foreign taxes) are properly allocable to a long-term contract and, hence, deduction must be deferred until the contract is completed; no method for deferring such expenses is discussed in these rulings. Rev. Rul. 59–329, then, rests on a foundation that is consistent with our reconciliation of the regulations, and which does not conflict with petitioner's and Monotech's use of

inventories for the purpose of determining amounts of cost of goods sold.

If this 1959 ruling was intended to go further than its foundation and further than the regulations, then there were many opportunities to so provide in the regulations or to clarify the matter in subsequent rulings. No such opportunities were availed of.

We believe that petitioner and Monotech complied with the requirements of the statute and the regulations authorized thereunder. We believe that the method used by petitioner and Monotech clearly reflected their consolidated income. We do not believe that respondent has authority to promulgate by a revenue ruling the absolute rule of law (see text at note 21 *supra*) he seeks to apply in the instant case. See *Estate of Lang v. Commissioner*, 613 F.2d 770, 776 (9th Cir. 1980), affg. in part 64 T.C. 404 (1975); *Stubbs, Overbeck & Associates v. Commissioner*, 445 F.2d 1142, 1146–1147 (5th Cir. 1971); *Sandor v. Commissioner*, 62 T.C. 469, 482 (1974), affd. 536 F.2d 874 (9th Cir. 1976); *Henry C. Beck Builders, Inc. v. Commissioner, supra.*

To summarize, we conclude that petitioner's method of accounting for costs of long-term contracts, using inventories, was consistently used, was in conformance with respondent's regulations, and was not inconsistent with the completed contract method of accounting. We disapprove of Rev. Rul. 59–329 on the facts of the instant case. We hold that petitioner's use of inventories to account for contract costs clearly reflected consolidated income during the years in issue and, accordingly, respondent is without authority to change it.[31]

### 3. Use of LIFO Under the Completed Contract Method

The final issue for resolution is whether respondent properly disallowed the use of LIFO by petitioner and Monotech to value inventories.

Respondent contends that the completed contract method of accounting and the LIFO inventory method are mutually

---

[31]Since we hold that petitioner's method clearly reflected consolidated income, we do not decide petitioner's argument that sec. 471 overrides sec. 451 and, therefore, inventories are mandatory in every case in which the production, purchase, or sale of merchandise is an income-producing factor. See sec. 1.471–1, Income Tax Regs.

exclusive because LIFO has the effect of deducting costs allocable to uncompleted contracts before such contracts are completed. Accordingly, respondent contends that LIFO causes a distortion of income under the completed contract method of accounting. Petitioner asserts that petitioner and Monotech are entitled to value their inventories using LIFO pursuant to section 472, that LIFO clearly reflects consolidated income for the years in issue, and that respondent's disallowance of LIFO is arbitrary since respondent has not suggested that petitioner's and Monotech's LIFO election was defective or that their method of applying LIFO was not in compliance with section 472 and respondent's regulations thereunder.

We agree with petitioner.

Inventories are used to compute cost of goods sold during a particular year,[32] and gross income or profit for the year is determined by subtracting cost of goods sold from gross sales. See sec. 1.61–3(a), Income Tax Regs. Consequently, an inventory valuation method which assigns lower costs to ending inventories will yield higher cost of goods sold and lower gross income.

Section 472(a)[33] authorizes the use of LIFO as a permissible

---

[32]The computation of cost of goods sold for manufacturers is more complex than for merchandisers. In general, a manufacturer's cost of goods sold is computed as follows:

| Cost of goods sold | = | Finished goods beginning inventory | + | Cost of goods manufactured | − | Finished goods ending inventory |
|---|---|---|---|---|---|---|

To determine cost of goods manufactured, the following separate computations are necessary:

| Cost of goods manufactured | = | Work-in-process beginning inventory | + | Cost of raw materials used, direct labor, and overhead | − | Work-in-process ending inventory |
|---|---|---|---|---|---|---|

| Cost of raw materials used | = | Raw materials beginning inventory | + Purchases − | Raw materials ending inventory |
|---|---|---|---|---|

See generally W. B. Meigs, C. E. Johnson & R. F. Meigs, Accounting: The Basis for Business Decisions 845–850 (4th ed. 1977).

Petitioner and Monotech do not maintain inventories of finished goods (apparently because they manufacture pursuant to specific purchase orders). Thus, petitioner's and Monotech's cost of goods sold equals their cost of goods manufactured.

[33]SEC. 472. LAST-IN, FIRST-OUT INVENTORIES.

(a) AUTHORIZATION.—A taxpayer may use the method provided in subsection (b) (whether or not such method has been prescribed under section 471) in inventorying goods specified in an application to use such method filed at such time and in such manner as the Secretary or

method of inventorying goods. Under LIFO, inventories are valued at cost and the items remaining on hand at the end of the year are deemed to have come, first, from opening inventories (in reverse order of acquisition) and, second, from items acquired during the taxable year. Sec. 472(b).[34] That is, the order of goods flowing through LIFO inventories is based on the convention that the goods purchased last are deemed to be the first goods sold and ending inventories are deemed to be composed of the earliest purchased goods. This convention is the reverse of the assumed order of goods flowing through inventories on a FIFO basis. In *Fox Chevrolet, Inc. v. Commissioner*, 76 T.C. 708, 723 (1981), we observed that "The theory behind LIFO is that income may be more accurately determined by matching current costs against current revenues, thus eliminating from earnings any artificial profits resulting from inflationary increases in inventory costs." Cf. *Hellermann v. Commissioner*, 77 T.C. 1361 (1981).

Before the years in issue, petitioner and Monotech consistently valued inventories using the lower of cost or market, identifying the flow of goods through inventories on a FIFO basis.[35] Beginning with the first year in issue (1974), petitioner and Monotech elected to use the dollar-value method[36] based on one natural business unit[37] to determine the value of LIFO inventories and the most recent purchases method[38] to determine the cost of goods in closing inventories in excess of those

---

his delegate may prescribe. The change to, and the use of, such method shall be in accordance with such regulations as the Secretary or his delegate may prescribe as necessary in order that the use of such method may clearly reflect income.

The subsequent amendment of this provision by sec. 1906(b)(13) [sic] (A) of the Tax Reform Act of 1976, Pub. L. 94–455, 90 Stat. 1834, does not affect the taxable years before us.

[34]SEC. 472. LAST-IN, FIRST-OUT INVENTORIES.

(b) METHOD APPLICABLE.—In inventorying goods specified in the application described in subsection (a), the taxpayer shall:

(1) Treat those remaining on hand at the close of the taxable year as being: First, those included in the opening inventory of the taxable year (in the order of acquisition) to the extent thereof; and second, those acquired in the taxable year;

(2) Inventory them at cost; and

(3) Treat those included in the opening inventory of the taxable year in which such method is first used as having been acquired at the same time and determine their cost by the average cost method.

[35]See secs. 1.471–2(c), 1.471–2(d), Income Tax Regs.
[36]See sec. 1.472–8, Income Tax Regs.
[37]See sec. 1.472–8(b), Income Tax Regs.
[38]See sec. 1.472–8(e)(2)(ii)(*a*), Income Tax Regs.

in opening inventories. This change in the method of valuing and identifying petitioner's and Monotech's inventories constitutes a change in accounting method. Sec. 1.446–1(e)(2)(ii)(c), Income Tax Regs.; see *F. S. Harmon Manufacturing Co. v. Commissioner*, 34 T.C. 316, 320 (1960). Except as otherwise "expressly provided" in chapter 1, a taxpayer must obtain the consent of respondent before changing an accounting method. Sec. 446(e); sec. 1.446–1(e)(2)(i), Income Tax Regs. Section 472(a) expressly provides otherwise, as follows:

SEC. 472. LAST-IN, FIRST-OUT INVENTORIES.

   (a) AUTHORIZATION. * * * The change to * * * [LIFO] shall be in accordance with such regulations as the Secretary or his delegate may prescribe * * *

Thus, a change to LIFO is controlled by the regulations under section 472 instead of the general principles for changes of accounting methods provided in section 446(e) and the regulations thereunder, and respondent's discretion as to an initial election of LIFO is far more circumscribed than in the case of changes of accounting method generally.[39] *John Wanamaker Philadelphia, Inc. v. United States*, 175 Ct. Cl. 169, 174–177, 359 F.2d 437, 439–441 (1966).

   Petitioner appears to have complied with the formal requirements of section 472 and the regulations thereunder, and

---

[39]This is to be contrasted with the authority given to respondent where a taxpayer who has properly elected LIFO wishes to change or fails to comply with conformity requirements. See sec. 472(e), which provides as follows:

SEC. 472. LAST-IN, FIRST-OUT INVENTORIES.

   (e) SUBSEQUENT INVENTORIES.—If a taxpayer, having complied with subsection (a), uses the method described in subsection (b) for any taxable year, then such method shall be used in all subsequent taxable years unless—

   (1) with the approval of the Secretary or his delegate a change to a different method is authorized; or,

   (2) the Secretary or his delegate determines that the taxpayer has used for any such subsequent taxable year some procedure other than that specified in paragraph (1) of subsection (b) in inventorying the goods specified in the application to ascertain the income, profit, or loss of such subsequent taxable year for the purpose of a report or statement covering such taxable year (A) to shareholders, partners, or other proprietors, or beneficiaries, or (B) for credit purposes; and requires a change to a method different from that prescribed in subsection (b) beginning with such subsequent taxable year or any taxable year thereafter.

If paragraph (1) or (2) of this subsection applies, the change to, and the use of, the different method shall be in accordance with such regulations as the Secretary or his delegate may prescribe as necessary in order that the use of such method may clearly reflect income.

.The subsequent amendment of this provision by sec. 1906(b)(13) [sic] (A) of the Tax Reform Act of 1976, Pub. L. 94–455, 90 Stat. 1834, does not affect the taxable years before us.

respondent has not indicated otherwise. Cf. *Gimbel Bros. Inc. v. United States*, 186 Ct. Cl. 299, 404 F.2d 939 (1968). Respondent has not suggested that petitioner has failed to comply with any of the substantive requirements, except for his absolute objection to the use of inventories and his contention that LIFO results in deducting costs of contracts that have not yet been completed.

We have already held that respondent's absolute objection to the use of inventories is not well founded. We conclude that respondent also errs in maintaining that LIFO necessarily results in deducting costs of contracts that have not yet been completed.

Respondent's position is set forth on brief as follows:

> During the years at issue, all costs attributable to incompleted contracts were computed using the last-in, first-out (LIFO) method of inventory valuation. The utilization of this method in computing costs resulted in additions to petitioner's LIFO reserve accounts in the amounts of $394,307 and $713,010 for each of the years at issue. Petitioner then reduced its ending inventory by the amount of its additions to the LIFO reserve accounts for each year, which increased costs of goods sold in the amounts of $394,307 and $713,010 for each of the years at issue. Therefore, petitioner has deducted, by increasing its cost of goods sold in excess of $1,100,000 for the years at issue, costs allocable to its incompleted contracts before these contracts were completed. * * * [Citations to the record omitted.]

We believe respondent has misinterpreted the effect of LIFO on petitioner's and Monotech's method of reporting income. The underlying purpose of the LIFO method of valuing inventories is to reverse the normal assumed flow of goods so that the last goods purchased or the last production costs incurred are considered to be the first goods (or costs) sold, thereby theoretically matching current income with current costs. Under petitioner's and Monotech's method of reporting income, costs attributable to purchase orders (or contracts) completed during the year are removed from inventories and charged to cost of goods sold for that year, but costs of materials not assigned to a job and costs attributable to jobs in process at yearend remain in raw materials or work-in-process inventories. Petitioner and Monotech, faced with increasing steel prices, valued yearend inventories using LIFO thereby assigning the most recently purchased materials costs to the contracts completed during the year. We reject respondent's assertion that petitioner and Monotech deducted costs proper-

ly allocable to incompleted contracts because ending inventories were reduced by the amount of the additions to the LIFO reserve account for the years in issue. As petitioner explains, the changes in the LIFO reserve account on petitioner's books represent the clerical calculations required under the regulations[40] to arrive at the value of ending inventories under the dollar-value LIFO method. The determination of the *value* to be placed upon an inventory has no relation to the principle or theory affecting the determination of *when* income is deemed to be received and expenses deemed incurred. *American Can Co. v. Bowers, supra.* As such, the additions to the LIFO reserve account do not amount to additional deductions for inventories included in cost of goods sold, but rather, represent the difference between the valuation of ending inventories using most recent costs (FIFO) and earliest costs (LIFO). Stated another way, the additions to the LIFO reserve account represent the difference in the deduction for costs of completed contracts when the most recent costs are assigned to the completed contracts under LIFO as opposed to the assignment of the earliest costs on a FIFO basis.

The LIFO method of inventory valuation is authorized by statute. The Congress intended that this method be available to all taxpayers properly maintaining inventories. *Basse v. Commissioner*, 10 T.C. 328 (1948); *Hutzler Brothers Co. v. Commissioner*, 8 T.C. 14 (1947). Detailed rules for the use of LIFO, including rules for the dollar-value method, are provided by the regulations under section 472; neither these regulations nor the regulations dealing with the completed contract method of accounting (sec. 1.451–3, Income Tax Regs.) prohibit or limit the use of a LIFO inventory method by a completed contract method taxpayer. We are unaware of abuses that might arise from allowing these taxpayers to account for the costs of contracts using inventories valued in accordance with the LIFO rules, and respondent has not enlightened us as to how petitioner's and Monotech's use of LIFO distorts income in a manner that is not the mere consequence of allocating most recent costs to contracts completed during the year which, in turn, results in the deduction of current costs. In

---

[40]See sec. 1.472–8(e)(2), Income Tax Regs.

fact, a comparison of the ratios of gross profit to gross receipts/sales, as computed from amounts shown on petitioner's and Monotech's consolidated income tax returns, for the years in issue (see table 3 *supra*) and for the preceding 5 years (see table 2 supra) does not indicate any significant distortion of consolidated income for the years in issue. We have consistently refused to conclude that a matching of current costs and current income in this manner distorts income, and can find no persuasive reason to conclude otherwise in the instant case.

On the basis of this record, we reject respondent's view that the completed contract method of accounting and the LIFO inventory valuation method are mutually exclusive.

Since respondent's perceived distortion of income appears to merely be the difference in the deduction for costs of completed contracts when the most recent costs (LIFO) are used rather than earliest costs (FIFO), we are convinced, on the facts of the instant case, that respondent's determination is more of an expression of preference for FIFO over LIFO than a determination that petitioner's consistent use of LIFO to value inventories will not reasonably reflect consolidated income. See *Klein Chocolate Co. v. Commissioner*, 36 T.C. at 147. While we recognize that respondent possesses broad powers under section 446(b) to determine whether an accounting method clearly reflects income, we do not believe respondent may compel a change from a permissible method of accounting which clearly reflects income in accordance with the regulations to another permissible method that is preferred by respondent. See *Photo-Sonics, Inc. v. Commissioner, supra*; *Madison Gas & Electric Co. v. Commissioner*, 72 T.C. 521, 553–555 (1979), affd. on other issues 633 F.2d 512 (7th Cir 1980); *Auburn Packing Co. v. Commissioner*, 60 T.C. 794, 798–800 (1973); *Garth v. Commissioner*, 56 T.C. 610, 618 (1971); *Sam W. Emerson Co. v. Commissioner*, 37 T.C. at 1068–1069. We think such a rule is particularly appropriate with respect to LIFO, a method expressly authorized by statute, and intended to be available to all taxpayers properly maintaining inventories (*Basse v. Commissioner, supra*; *Hutzler Brothers Co. v. Commissioner, supra*).

Respondent evidently is unhappy at petitioner's use of LIFO. The Congress has made the choice that LIFO is to be an

available inventory valuation method and, as we have indicated, the Congress has even cut back on respondent's almost-plenary authority as to changes in accounting method in this area. *John Wanamaker Philadelphia, Inc. v. United States*, *supra*. Petitioner appears to have complied with respondent's regulations dealing with the LIFO method. Respondent has failed to show us a policy problem so overwhelming as to force us to conclude that the Congress could not have meant what it said. Cf. *United Telecommunications, Inc. v. Commissioner*, 65 T.C. 278 (1975), supplemental opinion 67 T.C. 760 (1977), affd. 589 F.2d 1383 (10th Cir. 1978). The Congress has enacted its judgment regarding LIFO; we must guard against the efforts of the parties to persuade us to diminish (*Tipps v. Commissioner*, 74 T.C. 458, 472 (1980)) or expand (*Zuanich v. Commissioner*, 77 T.C. 428, 451–452 (1981), on appeal (9th Cir., Nov. 13, 1981)) what the Congress has chosen to enact.

In view of the foregoing, we hold that petitioner's and Monotech's use of LIFO was proper under the circumstances of the instant case in that it clearly reflects consolidated income in accordance with section 1.472–8, Income Tax Regs., and that respondent is without authority to change this use.[41]

To reflect the concessions of the parties and the conclusions reached herein,

*Decision will be entered under Rule 155.*

---

[41]Since we hold that petitioner may determine the costs of completed long-term contracts using inventories valued on the LIFO method, we need not address petitioner's other alternative argument that if inventories may not be used to accumulate deferred costs, LIFO may nevertheless be used to value such deferred costs.